R. C. SANDERS, Trustee, etc., *v.* J. H. FORGASSON, *et als.*

1. GUARDIAN. *Compensation of may be claimed by sureties. When.* Where a guardian has made the sureties on his bond liable, they will be entitled to the guardian's compensation, as settled by the County Court on his various settlements, as a credit on their liability.

2. SAME. *Settlement of. Presumption as to receipts against third parties. Evidence.* Where a guardian has made several settlements since the date of a receipt against a third party, the presumption is that he had credit for the same, and this presumption, where much time has intervened, must prevail, in the absence of proof to refute it.

3. SAME. *Married women. Husband may receive monies belonging to his wife. Guardian. When.* The provisions in the Code which require the receipt of the wife to be given, and that she shall be privily examined, apply to cases in which the property of married women is sold, upon

proceedings for that purpose in Court, and have no reference to the right of the husband to receive the personal property and choses in action of his wife, when the same are paid to him by personal representatives or guardians, without having to apply to a Court. In such cases, the marital right is unaffected by the Statutes, and the payment is valid and binding on the wife.

4. SAME. *Duty of guardian in taking security when he loans trust funds.* It is the duty of a guardian, or other trustee, to keep the business of his trust separate and distinct from his other business. When he loans trust funds, he should be able to show clearly that the security which he takes belongs to the trust fund. If he takes the security in his individual name, and not as guardian or trustee, the presumption is that he has used the fund for his individual benefit, and hence, that it is a conversion. But this presumption may be rebutted by proof, explaining the transaction.

Case cited: Draper *v.* Joyner, 9 Hum., 614.

5. SAME. *Liability of sureties on guardian bond for rents of land bought by guardian belonging to his wards.* Where a guardian procures the sale of his ward's land, and becomes the purchaser, if such sale be set aside by the Chancery Court, the sureties on the guardian bond will be liable for rent to the wards, during the period the guardian held the land under his void purchase.

6. SAME. *Executor of guardian. Liability of his sureties to the sureties of the guardian.* Where the executor of a guardian concedes that assets returned in his inventory consisted of notes and claims payable to his testator *individually*, but that, in fact, they were claims bought with the funds of his wards, and, therefore, belong to them, if the sureties of the guardian who have been liable seek to hold the executor and his sureties, the Court say: "That the executor himself is so responsible to the sureties of the guardian may be conceded, upon the ground that he admits that they came into his hands, and he undertook to administer them as assets of the estate; but his sureties, as executor, can only be held responsible for the faithful administration of the assets which *actually* belonged to the estate, and they are not precluded by his return in his inventory from showing the truth of their ownership.

7. SAME. *Liability of guardian's sureties for interest.* Simple interest followed as a legal consequence upon the amount of the liability of the guardian, when his guardianship terminated by his death.

R. C. Sanders, Trustee, etc., *v.* J. H. Forgasson, *et als.*

8. SAME. *Decree against guardian but not against sureties. Res judicata. Pleading and practice.* In a suit against a guardian, where the sureties are not made parties, a decree against him is no bar to a subsequent suit against the sureties. When such decree has not been satisfied by the guardian, the sureties will be entitled to a credit for so much as may have been collected from the guardian.

Case cited: Beloit *v.* Morgan, 7 Wall., 622.

---

FROM SMITH.

---

Appeal from the Chancery Court. H. C. SMITH, Chancellor.

R. C. SANDERS for Sanders.

FITE & HEAD for Forgasson.

NICHOLSON, C. J., delivered the opinion of the Court.

In 1850, Dixon Forgasson was appointed guardian of John W., Mary H., and Josephine C. Rankin, minor children of John Rankin, deceased, and gave bond in $28,000, with Jos. L. Carter, Jeremiah H. Allen, and Archibald Thompson as his sureties. He took charge of the funds of his wards, and managed them until his death, in 1860. At his death he left a will, of which J. H. Forgasson was appointed executor. He qualified at the January Term, 1861, of the Smith County Court, and gave bond, with A. C. Towson and John Towson as his sureties.

In 1868, complainants, who had been the wards of Dixon Forgasson, their grandfather, filed their bill

R. C. Sanders, Trustee, etc., *v.* J. H. Forgasson, *et als.*

against the sureties of their former guardian, for an account of his management of their funds, charging gross dereliction of duty in his trust, and against J. H. Forgasson, as executor of Dixon Forgasson, with his sureties, charging that a portion of their funds came into his possession as executor, and praying for all necessary process and accounts, and for general relief.

At the February Term, 1872, an interlocutory decree was made, recommitting a report of the Clerk and Master, and another report upon various specific matters involving all the questions of fact and law involved in the litigation, the question of law being reserved.

In pursuance of this decree, the Clerk and Master made his report to the August Term, 1872, when exceptions were filed thereto by all the parties, and upon the action of the Chancellor upon these exceptions, the questions arise for our determination.

1st. We will dispose of the exceptions filed by complainants.

1. Because the Clerk and Master has allowed the compensation of the guardian, as settled by the County Court on his various settlements, as a credit to the sureties on the guardian bond. The Chancellor disallowed this exception, and we affirm his action.

2. The Clerk charges John W. Rankin with $150, based upon a number of small receipts, dated in 1856. This is excepted to, and the exception disallowed. The guardian made four settlements after the date of

R. C. Sanders, Trustee, etc., *v.* J. H. Forgasson, *et als.*

these receipts, and the presumption is that he had credit for them. This presumption, after so long a time, must prevail, as there is nothing to rebut it. The exception should have been allowed.

2d. J. H. Forgasson, executor, and his sureties filed five exceptions:

1. In item three of the report the Clerk and Master says: "There should be in the hands of the executor, which he has not paid out, about $2,533 89, which should belong to complainants." This is excepted to, because, of this amount, $2,092 41 is made up of the note of J. M. Hutchins, and of money paid to him as the husband of M. J. Hutchins, one of complainants, and of $273, a note of J. and A. Forgasson, payable to Dixon Forgasson, as guardian. This exception is disallowed by the Chancellor. It appears that the notes of J. M. Hutchins, and the amounts paid to him, were for monies paid by the executor, which belonged to Hutchins' wife, as part of her funds in the hands of her guardian. The proof is, that this money went into the hands of her husband with her consent, but she executed no receipt for it, nor was she privily examined. It is now insisted, that the payment was not valid and binding on her, and that the executor should be held responsible for it. The provisions in the Code which require the receipt of the wife to be given, and that she shall be privily examined, apply to cases in which the property of married women is sold, upon proceedings for that purpose in Court, and have no reference to the right

of the husband to receive the personal property and choses in action of his wife, when the same are paid to him by personal representatives or guardians, without having to apply to a Court. In such cases, the marital right is unaffected by the Statutes, and the payment is valid and binding on the wife. Such is the present case, and to the extent of the $2,092, the exception was well taken, so, also, to the $273, note payable to the guardian.

2. The report, item six, is excepted to as erroneous, because it reports various notes on J. B. Holman and others as available assets. This exception was disallowed by the Chancellor. We think the proof shows that J. and A. Forgasson were insolvent, and so far as their notes are concerned, the exception ought to have been allowed, unless J. B. Holman was jointly bound with them. To this extent the action of the Chancellor is reversed.

3. This exception was correctly allowed by the Chancellor, being as to notes payable to Dixon Forgasson, as guardian.

4. The Clerk and Master charges interest on each item of the inventory from the date thereof. This exception was disallowed, and as the executor was allowed interest from the same date on all insolvencies and claims not collected, he acquiesces in the ruling of the Chancellor. It is, therefore, not disturbed.

5. This exception relates to the failure of the Clerk and Master to charge Mildred J. Hutchins with the notes and receipts of her husband, John Hutchins.

The Chancellor disallowed it, but we have already disposed of this question, in holding that the payments by the executor were valid. The Chancellor's holding is, therefore, reversed.

3d. The sureties of the guardian file seventeen exceptions to the report, of which the Chancellor sustained the 4th, 5th, 7th, 8th and 13th, all of which were properly sustained, and his action is affirmed. He disallowed the 1st, 2d, 3d, 6th, 9th, 10th, 11th, 14th, 15th, 16th, and 17th. He sustains exception 12th in part.

We will consider the exceptions not sustained, in their order.

1st. It appears that after the death of Dixon Forgasson, his executor, J. H. Forgasson, made a settlement of the guardian accounts with the County Court in January, 1861. The guardian had in his possession a large amount in insolvent notes and judgments in favor of Dixon Forgasson, which notes and judgments arose from the use of the guardian funds in discounting notes at from eight to twelve per cent., the claims being in favor of Dixon Forgasson individually, and not as guardian. The exception is, that the Clerk and Master erred in charging the sureties of the guardian with the whole amount of these insolvent claims, but that they should have had a credit for them. As stated, the Chancellor overruled this exception.

It is the duty of a guardian, or other trustee, to keep the business of his trust separate and distinct from

his other business. When he loans trust funds he should be able to show clearly that the security which he takes belongs to the trust fund. If he takes the security in his individual name, and not as guardian or trustee, the presumption is that he has used the fund for his individual benefit, and, hence, that it is a conversion. But this presumption may be rebutted by proof, explaining the transaction. *Draper* v. *Joyner,* 9 Hum., 614.

The proof fails to give such explanations of the transactions of the guardian as to rebut the presumption that he was using the funds for his individual benefit. It shows that he was engaged in buying notes at a discount, and it may be that he was actuated by a desire to promote the interest of his wards, who were his grandchildren, as well as his own interests. But he was doing this in violation of his duty to loan the funds on good security, and to loan it only for the benefit of his wards. We are of opinion the Chancellor committed no error in overruling this exception.

2d. This exception we understand to be abandoned.

3d. The proof fails to sustain this exception.

6th. The report charges the sureties of the guardian for rent of land, from its sale by the Circuit Court of Smith County until the death of the guardian. It appears that the guardian procured the land to be sold, and became the purchaser. Afterwards, his wards recovered the land by a suit in Chancery, upon the ground that the sale was void. The rents with which

the sureties are charged accrued during the period the guardian held the land under his void purchase. Upon the setting aside of this sale by the Chancery Court, the guardian was responsible for rent, and it was properly charged to him, and his sureties are responsible for his failure to discharge his duty in this regard. They are entitled to be credited with the amount of the purchase-money, with compound interest, and this credit has been given. The exception was properly overruled.

9th. This exception was disposed of under exceptions four and five, which were sustained.

10th. This exception is not sustained by reference to the report.

11th. The Clerk and Master was ordered to report the amount of notes now in the hands of J. H. Forgasson, uncollected, which were executed by Dixon Forgasson, in his own right, for the funds of complainant, used by him, etc. It is excepted, that the report is incorrect, because it reports no such notes, etc., whereas Dixon Forgasson had no means of his own, but used the funds of his wards in loaning and purchasing notes, all of which returned in his inventory belonged to complainants. This may be true, but it does not show that these notes, etc., arose from loans of his wards' funds for solvent notes. The proof shows that the trust funds were not loaned on good security, but were used in discounting notes in the name of Dixon Forgasson. The exception to the report was not well taken, and was properly overruled.

17—vol. 3.

12th. This exception relates to the money, notes and receipts for money paid over by the executor to M. J. Hutchins, and ought to have been sustained, as we have already indicated.

14th, 15th and 16th. These exceptions point out omissions in the report as to the amount of available assets in the hands of the executor, and defects in the account, so far as it fails to show how the executor disposed of all the assets which came to his possession.

In this question complainants have no interest, as they are looking to the sureties of the guardian for their recovery. But it is insisted for the sureties of the guardian that they have a right to a decree over against the executor and his sureties, all of whom are before the Court, for whatever amount of the trust funds that went into the hands of the executor, and which, by reasonable diligence, he either did collect, or might have collected, and for such amounts as he may have paid to others than complainants.

It is conceded by the executor, that a large portion of the assets returned in his inventory, consisted of notes and claims payable to Dixon Forgasson, individually, but that, in fact, they were notes and claims bought with the funds of his wards, and, therefore, belonged to them.

It is now insisted, that because he treated these notes as assets of the estate, of Dixon Forgasson, and because his sureties as guardian are held responsible for the amount thereof not accounted for, on the ground that the guardian was guilty of default in their

conversion, therefore the sureties of the guardian ought to have recourse against the executor and his sureties for so much thereof as the executor may have lost by want of diligence, or may have paid out to others than complainants. That the executor himself is so responsible to the sureties of the guardian may be conceded, upon the ground that he admits that they came into his hands, and he undertook to administer them as assets of the estate; but his sureties, as executor, could only be held responsible for the faithful administration of the assets which actually belonged to the estate, and they are not precluded by his return in his inventory from showing the truth of their ownership. He had no right to use the trust in paying the counsel's fees or the costs in the suit for the land by complainants against him and the other devisees of Dixon Forgasson, nor was it right to allow him compensation of $500 out of the trust funds. These credits were erroneously allowed; but neither complainants nor the sureties of the guardian are entitled to decrees for the amounts so improperly paid against the executor's sureties. If the sureties of the guardian desire an account against the executor for losses occurring through his want of fidelity, or neglect in the collection, or in the misapplication of the trust funds which came to his hands, they are entitled to it, but they are entitled to no such account with a view of making his sureties, as executor, responsible therefor. We are of opinion, however, that the proof fails to show that the executor was guilty of bad faith, or want of proper diligence, in his

efforts to collect the funds, and, hence, we order no account as to these matters, nor as to the misapplication of the funds beyond the items already indicated, unless the securities of the guardian insist on such account.

17th. This disposes of all the specific exceptions to the report, except the 17th, on the subject of interest charged against the sureties of the guardian after his death. This exception was properly overruled. Simple interest followed as a legal consequence upon the amount of the liability of the guardian, when his guardianship terminated by his death.

In addition to the specific exceptions by the sureties of the guardian, it is insisted for them that they are erroneously charged with $2,616 15, the proceeds of land of his wards, sold by the Circuit Court upon the application of the guardian.

It is well settled, that prior to the Code, the sureties of the guardian were not responsible for proceeds of land so sold, coming into the hands of the guardian after the execution of his bond. But in this case, after the fund came into the hands of the guardian, he executed another bond, and when this bond was executed, he had in his hands, as guardian funds, the proceeds of the land sold. His bond covered this fund, and his sureties on that bond were properly chargable with it.

It is also insisted that the sureties ought not to be charged with the rent of the land purchased by the guardian from 1854 to 1860 inclusive, because complainants filed their bill in the Chancery Court against the

guardian to recover the land, and for rents, and had a decree restoring to them the land, and an account against the guardian for rents.

It is argued, that because complainants filed their bill for the rents, against the guardian, and obtained a decree, that this is *res adjudicata* as to the sureties who were not made parties. It is the law, that where a given matter becomes the subject of litigation in, and adjudicated by, a Court of competent jurisdiction, the Court requires the parties to bring forward the whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of a matter which might have been brought forward as a part of the subject in contest. *Beloit* v. *Morgan,* 7 Wall., 622. But it is essential to the application of this rule, that the Court have jurisdiction over the subject matter and over the parties. In the Chancery case the Court had jurisdiction of the subject matter, but complainants were not bound to seek a decree against the sureties of the guardian. Their obligation was joint and several. A decree against the guardian was no bar to a subsequent suit against the sureties, if they failed to obtain satisfaction of their decree out of the guardian. The rule applies to cases of splitting indivisible demands, and not to cases of enforcing obligations which are joint and several. The sureties of the guardian will be entitled to a credit for whatever amount may be recovered and realized by complainants in the Chancery suit, but they are not compelled to look to that suit alone for their rents.

The report of the Clerk and Master will be reformed and corrected, as herein specified, by the Clerk of this Court, and upon this being done, the decree of the Chancellor will be modified accordingly.