GEORGE B. CLARK *et al. v.* GEORGE F. PENCE *et al.*

(*Knoxville.* September Term, 1903.)

1. **DEMURRER.** Of one defendant overruled is not res adjudicata against other defendants who answered, without demurring.

Where some of the defendants answered a bill and a codefendant subsequently demurred to the bill which demurrer was overruled in general terms by the court, the principle invoked by complainants that such judgment upon the demurrer is *res adjudicata* upon the trial upon the merits can obviously have no application as to the defendants who so answered without demurring. (*Post, pp.* 26-27.)

2. **SAME.** Overruled in general terms is not res adjudicata of the sufficiency of the bill, when.

A decree overruling in general terms a demurrer to a bill presenting distinct grounds for relief does not adjudicate that such bill is maintainable in all its aspects, but only that there is sufficient equity on its face to require an answer and such decree does not preclude the court upon the trial on the merits from inquiring into the legal sufficiency of any of the grounds for relief stated in the bill, and such decree by the supreme court does not preclude it from making such inquiry upon a second appeal. (*Post, pp.* 27-28.)

Cases cited and approved: Rodgers v. Dibrell, 6 Lea, 69; Kirkpatrick v. Utley, 14 Lea, 96; Battle v. Street, 85 Tenn., 282; Jourolmon v. Massengill, 86 Tenn., 90.

Cases cited, distinguished and modified: Jameson v. McCoy, 5 Heisk., 108; McNairy v. Nashville, 2 Bax., 251.

3. **ADMINISTRATOR.** Of deceased administrator may collect notes payable to him as such; and his sureties are liable.

An administrator may, by suit or without suit, collect notes

Clark v. Pence.

payable to his intestate as administrator which are assets belonging to another decedent's estate, and having collected the same, his sureties are liable for his failure to account therefor, and they can not escape such liability, because such notes could have been collected by an administrator *de bonis non* of the estate of the first decedent. (*Post, pp.* 28-30.)

Cases cited and approved: Abingdon v. Tyler, 6 Cold., 502; Wood v. Tomlin, 92 Tenn., 514.

4. **SAME. Suit on notes payable to, and revivor thereof, prosecuted in whose name.**

A note payable to a personal representative may be sued on by him in his individual capacity, or in his representative capacity, and if sued on in his representative capacity, upon his death before its termination, the suit may be revived in the name of his own administrator or in that of the administrator *de bonis non* of his intestate's estate. The recovery in either case is subject, however, to all proper accounts between the two estates. (*Post, pp.* 29-30.)

Cases cited and approved: Abingdon v. Tyler, 6 Cold., 502; Wood v. Tomlin, 92 Tenn., 514.

FROM WASHINGTON.

Appeal from the Chancery Court of Washington County.—HAL. H. HAYNES, Chancellor.

DEADERICK & EPPS and KIRKPATRICK, WILLIAMS & BOWMAN, for Clark.

ISAAC HARR, E. J. BAXTER, and ROSE & HICKEY, for Pence.

Clark v. Pence.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Complainants, as sureties on the bond of D. S. Northington, who, qualified as administrator of Julia Pence, deceased, filed this bill *quia timet,* to be exonerated from liability for funds collected by said administrator belonging to the estate of Pleasant Witt, deceased. It was conceded that said sureties were liable for all assets that came into said administrator's hands belonging to the estate of Julia Pence, deceased, but it was alleged that he had also collected funds due the estate of said Witt. The controversy arises upon the following facts found by the court of chancery appeals through Judge Wilson:

"A number of years since, Pleasant Witt died intestate in Washington county, leaving a widow, Julia, and three children, two of them minors. He possessed real estate valued at $2,500 or $3,000, besides some personal property. He appointed his wife, Julia, his executrix, without bond. She was given full power to dispose of his property, both real and personal, as she saw proper for the best interests of herself and children; and it was provided therein that upon her marriage it should be divided, or what remained should be divided, into four equal parts, she taking one part, and each of the three children one part. All the personal property available was exhausted in the payment of the debts of the testator, as well as a part of the real estate which was sold. After the payment of debts and the costs of

administration, there remained about $1,600, proceeds of the sale of real estate. The real estate, it appears, was sold to the defendants Campbell and Fraker for $3,500. They paid $2,000 cash, and executed their three notes for $500 each to the testatrix, Julia, as executrix of the will of her first husband. They paid off two of these notes before she died, leaving one note for $500 outstanding and unpaid in her hands. The said Julia intermarried with the defendant George F. Pence. Upon her marriage, one-fourth of the estate devised by her husband, having been converted into personal property by the sale of the real estate, was reduced to possession by defendant Pence. Said Pence became the guardian of one of her minor children by her first husband, and D. S. Northington became the guardian of another. Her husband, the said George F. Pence, borrowed two sums from her, and executed his notes therefor, payable to her as executrix. The notes of Campbell and Fraker given to her for real estate were also payable to her as executrix. The said Julia died intestate, and D. S. Northington qualified as the administrator of her estate, with complainants, Clark, Jackson et al. as sureties on his administration bond. The notes aforesaid given by her last husband to her as executrix for borrowed money, and the last note given her by Campbell and Fraker for the real estate, payable to her as executrix, passed into the hands of D. S. Northington after his qualification as her administrator. These notes were turned over to said D. S. Northington, as her

administrator, by her last husband, defendant Pence. Pence, it appears, paid to Northington, as said administrator, the notes given by him to his wife as executrix of her first husband, Pleasant Witt, deceased, and the proceeds were properly disbursed by said Northington. Northington also collected, with interest, the notes executed by Campbell and Fraker for the real estate sold to them by Mrs. Witt. Northington then fled the country, without making any settlements or reports as administrator. Said Northington is insolvent."

The present bill, as already stated, was filed by the sureties on the administration bond of Northington, praying to be relieved from liability for funds collected by said Northington which belonged to the estate of Pleasant Witt, deceased. The theory of the bill is that complainants had become bound as sureties on the bond of said Northington, executed as administrator of Julia Pence, deceased, and that as such administrator Northington had no authority to collect notes which had been executed to Julia Witt as executrix of Pleasant Witt, deceased, her first husband. The bill further alleges that the said Julia had no estate of her own, the personalty owned by her having been reduced to possession by her husband, the said George F. Pence, after their marriage. Complainants allege that they are, nevertheless, entitled to be relieved as sureties of said Northington on his administration bond under the statute, and that the flight of said administrator from the country

prevents the obtaining of this relief in any other way, so far as they know, except through this proceeding.

Defendants Fraker and Campbell answered the bill, in which they resisted the relief asked by complainants. They denied that Mrs. Pence had no estate to be administered, and alleged that as executrix she did have an estate under the terms of the will of Pleasant Witt, deceased.    Defendant Pence filed a demurrer to the bill, assigning the following grounds, viz. :

Complainants are not entitled to be relieved as sureties on the bond of Northington, because their bill on its face alleges that the said Julia Pence at her death had no estate of her own, and no estate whatever except what came to her hands as executrix of her first husband, and, if so, complainants knew or ought to have known this fact; and yet they became the sureties of Northington as her administrator, and thus enabled him and put it in his power to collect these notes from the borrowers as assets of her estate, and hence they are now estopped to deny their liability as sureties on his bond; and, said administrator having collected these notes and other assets on the strength of his appointment and his bond, complainants are estopped to deny the validity of said bond or the legality of Northington's appointment.    The chancellor was of opinion that the demurrer was not well taken and overruled the same. Defendant Pence and the other defendant, Mary Pence, then answered the bill.    Proof was taken, and the chancellor decreed that the complainants, as sureties of said

Northington, administrator, are bound for the funds collected by him as such on notes payable to his intestate as executrix of her former husband's estate, and that, therefore, the complainants are not entitled to the relief on this point sought in the bill, and their bill, in this aspect of it, should be dismissed.

Complainants Jackson and Clark appealed from that decree. The court of chancery appeals has affirmed the decree of the chancellor. Complainants have again appealed to this court, and the first assignment is that the court of chancery appeals erred in decreeing that the action of the chancellor in disallowing the demurrer of George F. Pence, when the facts alleged in the bill and involved in the demurrer were the same presented on the trial on the merits, were not *res adjudicata,* because the judgment on the demurrer under such circumstances is *res adjudicata* as to the matters of fact and law involved in such hearing; citing *McNairy* v. *Mayor,* 2 Baxt., 251; *Jameson* v. *McCoy,* 5 Hiesk., 108.

It was held in *McNairy* v. *Mayor* that before the adoption of the Code of 1858 after the overruling of a general demurrer to a bill in equity the defendant might insist upon the same matters in his answer, there being no appeal from such a decree until the final hearing on the merits; but that since the adoption of the code, and the allowance of an appeal from the ruling of the chancellor upon a demurrer, the decree of the supreme court upon such an appeal overruling a demurrer and remanding the cause for plea or answer is conclusive upon that

Clark v. Pence.

court as well as upon the court below in the particular case as to the matters adjudged by the decree. This opinion cited and followed the case of *Jameson, Adm'r, v. McCoy,* 5 Heisk., 108.

In respect of the application of these cases in the present instance, it may be said that the defendants Fraker and Campbell answered the bill nearly a month before the demurrer of the defendant Pence was filed. It is therefore obvious that as to the defendants Fraker and Campbell the principle invoked has no application. As to the demurrer of the defendant Pence, the record shows that it was overruled by the chancellor in general terms. In *Battle* v. *Street et al.,* 85 Tenn., 282, 2 S. W., 384, it was held that a decree of the supreme court overruling in general terms a demurrer to a bill presenting distinct grounds for relief does not adjudicate that such bill is maintainable in all its aspects, but only that there is sufficient equity on its face to require an answer, and such decree does not preclude this court from inquiring upon a second appeal into the legal sufficiency of any of the grounds for relief stated in the bill. After citing *Rodgers* v. *Dibbrell,* 6 Lea, 69, and *Kirkpatrick* v. *Utley,* 14 Lea, 96, the court remarked that, in so far as these cases differ from the earlier cases of *Jameson, Adm'r, v. McCoy,* 5 Heisk., 108, and *McNairy* v. *Mayor,* 2 Baxt., 251, they necessarily modify the earlier opinions. In *Jourolmon* v. *Massengill,* 86 Tenn., 90, 5 S. W., 719, it was held, approving *Battle* v. *Street,* 85 Tenn., 282, 2 S. W., 384, that a decree of the supreme court overrul-

ing a demurrer to a bill and remanding the cause, followed by a dismissal, without further proceedings, in the chancery court, will not bar a hearing upon the merits in a subsequent litigation between the same parties involving the same subject-matter and issues. Such decree decides only that the bill has on its face sufficient equity to require an answer, citing and approving *Battle* v. *Street,* 85 Tenn., 282, 2 S. W., 384. In the present case there was manifest equity on the face of the bill, and the relief prayed was in a double aspect: First, it sought relief for complainants from liability as sureties on the administration bond of Northington for notes collected by him which belonged to the estate of Pleasant Witt, deceased; and, second, it sought to ascertain the liability of Northington as administrator of the estate of Julia Pence, formerly Witt, so as to ascertain the liability of complainants as his sureties.

The next assignment is that the court of chancery appeals erred in decreeing that complainants were bound for the assets of Pleasant Witt's estate because they came into the hands of Northington while administrator of Mrs. Pence's estate. The contention now made is that these notes were assets of the estate of the first husband, executed and payable to Mrs. Witt as executrix, and that upon her death they could not legally pass into the hands of her administrator, but passed to the administrator *de bonis non* of the estate of the first husband.

On this subject the court of chancery appeals held

Clark v. Pence.

that under the authorities the administrator of Mrs. Julia Pence had the right to take charge of, preserve, and collect these notes, which were payable to her simply as executrix, and that while, strictly speaking, these notes could have been collected by an administrator *de bonis non* of the estate of her first husband, still, the complainants having gone on the bond of Northington as her administrator, and placed him in a position to take charge of said notes and collect them, they are responsible. The court cites in support of its position *Abingdon* v. *Tyler*, 6 Cold., 502, and *Wood* v. *Tomlin*, 92 Tenn., 514, 22 S. W., 206. In the latter case it appeared that W. A. Wood, as administrator of Elizabeth Martin, deceased, brought suit to recover balance on a note executed by Tomlin. Complainant died pending the suit, and a motion was made to revive the cause in the name of his administrator. The motion was resisted upon the ground that the revivor should be made in the name of an administrator *de bonis non*. The note in suit, said the court, was not an ordinary asset of Elizabeth Martin's estate. It was not executed to her in her lifetime, but was given to W. A. Wood, as her administrator, for borrowed money. The court cited the text of *Redfield on Wills*, viz.: "And it seems that upon notes and bills given to the personal representative as such for debts due the estate he may sue in his representative capacity, or he may sue in his own name, treating his representative capacity alleged in the contract as a mere *descriptio personae*." This court accordingly held that Wood

could have brought this action in his own name or in his official capacity at his election, and that, having elected to pursue the latter course, the note involved should here be treated as an asset of the estate of his intestate, and not as an asset of his own estate.

It was further held that, having brought the suit in his representative capacity, and dying before its termination, that either his own administrator or an administrator *de bonis non* of Elizabeth Martin might be entitled to a revivor in his name; the recovery in either case to be subject to all proper accounts between the two estates. The motion to revive in the name of the administrator of Wood was allowed.

This case cites with approval *Abingdon* v. *Tyler*, 6 Cold., 502, in which it was held that notes given to an executor for land sold by him belonging to his testator may be sued by the executor in his representative capacity, and, upon his death, by his personal representative.

We may add that this right presupposes, of course, that the personal representative of the executor may collect such notes without suit. This is what was done by Northington in this case, and his sureties are liable for such collections.

Affirmed.