R. L. SYKES, Administrator, v. J. L. WHITE, Administrator et al.

Western Section. October 23, 1931.

Petition for Certiorari denied by Supreme Court, March 12, 1932.

J. L. White, of Decaturville, for J. L. White, Administrator.

W. M. Hall, of Memphis, for United States Fidelity & Guaranty Co.

W. V. Tucker, of Decaturville, and Joe C. Davis, of Lexington, for appellee.

SENTER, J.   The original bill was filed in this cause by the complainant, R. L. Sykes, administrator of the estate of G. W. Sykes, deceased, against J. L. White, administrator of the estate of J. A. Sykes, deceased, Mrs. Bess Sykes, and United States Fidelity & Guaranty Co., surety on the administrator's bond of J. L. White. The material allegations in the bill may be stated as follows: That G. W. Sykes died intestate about three years before the filing of the bill and that R. L. Sykes was duly appointed and qualified as the administrator of the estate of G. W. Sykes; that Albert Sykes (J. A.) died intestate in Henderson County about a month before the death of G. W. Sykes, and that J. L. White a short time before the filing of the bill qualified as the administrator of the estate of J. A. Sykes, deceased, with United States Fidelity & Guaranty Company on his bond as such administrator.

The bill alleges that about 1920 G. W. Sykes began drawing from the United States government the sum of $57.50 per month on a War Risk Insurance policy on the life of his son, Troy Sykes, and out of the money so received from said source, the said G. W. Sykes made deposits in the nature of time deposits in the Bank of Commerce at Parsons, Tennessee, and received certificates of deposit covering such deposits.   These time deposits were made from time to time maturing in six months, and with the maturity of the certificates of deposit G. W. Sykes would draw the interest paid by the bank on said deposits and would renew the certificates, by having new certificates issued; that in making these time deposits and taking deposit certificates therefor, he made the deposits, not

in his own name, but in the name of his son, J. A. (Albert) Sykes, but that he personally made these deposits and took the certificates into his possession and kept them until he would surrender same to the bank and have new certificates issued. The bill alleges that this course was taken by complainant's intestate because he apprehended that certain parties would try to reach the fund on a note which he claimed to have been forged against him, and this course was taken as a matter of precaution. The bill alleges that at no time did J. A. Sykes, his son, and in whose name the deposits had been made, have the right or undertook to exercise the right to check on said deposits or to withdraw the same or to exercise any rights of ownership over the same, and that the certificates of deposit were at all times in the possession of G. W. Sykes, and that he personally drew the interest on these time deposits as the same would mature and would also renew the certificates, and kept the same in his possession, and said funds at the time of his death amounted to about $1200.

The bill alleges that after the death of J. A. Skyes his widow procured the defendant, J. L. White, to qualify as the administrator of the estate of said J. A. Skyes, with the United States Fidelity & Guaranty Co. surety on his administrator's bond, and that said administrator had drawn said fund out of the bank, and that commissioners appointed by the County Court had fixed the amount of a year's support to the widow of J. A. Sykes, the defendant Mrs. Bess Sykes, at $689, and the commissioners' report was approved and confirmed by the County Court, and that J. L. White, administrator, had paid said sum to defendant, Mrs. Bess Sykes.

The bill alleges that defendant, J. L. White, knew that this money in the bank belonged to the estate of G. W. Sykes at the time he qualified as the administrator of the estate of J. A. Sykes.

The bill seeks to impound so much of the fund as had not been expended and to obtain a judgment against Mrs. Bess Sykes for the amount that had been paid over to her out of said fund, and a judgment against J. L. White, administrator, and surety, United States Fidelity & Guaranty Co., for all of said funds.

All three defendants filed a demurrer to the original bill. The grounds of demurrer challenge the bill as being without equity on its face, and that complainant had been guilty of gross laches, and pleaded the statute of limitations of three and six years; that the allegations in the bill to the effect that the funds in question had been deposited by G. W. Sykes for the purpose of defeating and hindering and delaying claimants and creditors of said G. W. Sykes showed that complainant had come into court with unclean hands, and that he would be repelled by a court of equity on the allegations made in the bill.

After the filing of the demurrer, and before any action was taken thereon by the Chancellor, each of the defendants filed separate answers to the bill. Practically the same defenses are relied upon by each of the three defendants. They each deny that the money on deposit at the Bank of Commerce belonged to G. W. Sykes, but alleged that the money belonged to J. A. Sykes at the time of his death, and deny the material allegations of the bill with reference to the ownership of said money so deposited to be in G. W. Sykes at the time of his death.

Several depositions were taken by the respective parties. At the hearing of the cause the Chancellor held and so decreed that the demurrer originally filed was overruled, and that by a preponderance of the evidence the money so deposited by G. W. Sykes in the name of J. A. Sykes belonged to G. W. Sykes at the time of his death, and that at no time did it belong to J. A. Sykes. The Chancellor further held and decreed that J. L. White, as administrator of the estate of J. A. Sykes was not entitled to this fund, but that complainant, as the administrator of the estate of G. W. Sykes, was entitled to this fund, amounting to the sum of $1289.75. The Chancellor decreed a judgment in favor of complainant and against J. L. White, and the United States Fidelity & Guaranty Company, surety on the administration bond of J. L. White, for the said sum of $1289.75, and also adjudged and decreed a judgment against the defendant, Mrs. Bess Sykes, for the amount which she had received, and directed that she pay the $100 which she admitted she still retained of said fund in to the hands of the Clerk and Master to be applied on the judgment of $1289.75, and directed that J. L. White repay and refund the $68 which Mrs. Bess Sykes had paid to him as attorneys fees, which sum had been paid out of the money she had received from him as administrator of said estate.

From this decree all of the defendants prayed and were granted appeals to this court, on condition that they execute appeal bonds as required by law.

The defendants attempted to comply with the conditions of the appeal by executing a bond in the sum of $250. Motions were filed by complainant that the appeal of the defendants be dismissed or that this court affirm the judgment and decree of the Chancellor on the ground that the defendants had not executed appeal bonds as required by law.

Upon this motion being filed the defendant, United States Fidelity & Guaranty Company, moved to be permitted to amend the appeal bond as far as that defendant is concerned, by executing and filing an appeal bond in the sum of $2,000. The amended appeal bond to be treated as an amendment to the first bond ex-

ecuted and to relate to the date of the filing of the original appeal bond. The other defendants did not seek to amend their appeal bond by having the same increased, but are resisting the motion of complainant on the theory that the appeal bond executed by them in the sum of $250 conforms to the requirement of the statute.

The complainant also filed a motion that the decree of the Chancellor be affirmed as to the defendants, J. L. White and Mrs. Bess Sykes, on the ground that the assignments of error filed by these defendants were not filed within the time fixed by the rules of this court.

We will first dispose of these motions. In the matter of the motion of the defendant, United States Fidelity & Guaranty Company, to be permitted to amend the appeal bond and to file an amended appeal bond, we are of the opinion that this motion should be sustained and the amendment allowed. Morris v. Smith, 11 Humph., 133; Andrews v. Page, 2 Heis., 641; Wilson v. Corry, 1 Lea, 392; Schneider v. Summers, 1 Lea, 483. The motion of complainant for a dismissal as to the defendant United States Fidelity & Guaranty Company because of the insufficiency of the appeal bond is accordingly overruled.

The motion of complainant for an affirmance of the decree of the Chancellor as to the defendants J. L. White and Mrs. Bess Sykes because the assignments of error and brief of these two defendants were not filed within the time allowed by the rules of this court must be sustained. J. L. White and the attorney for Mrs. Bess Sykes have filed affidavits in support of their contention that their failure to file the assignments of error within the twenty-five days rule was due to the fact that a few days before the twenty-five days elapsed the attorney for complainant took the record out of the office of the attorney for Mrs. Bess Sykes and took it to Lexington and that it was not returned until after the time had elapsed for the filing of the assignments of error. Both attorneys for complainant filed counter-affidavits, admitting that the record was taken from the office of the attorney for Mrs. Sykes, but that it was returned the following day and within time for the filing of the assignments of error. One of the attorneys for complainant stated in his affidavit that he was preparing to take a two weeks vacation and desired the use of the record for a day or two in order to reply to the assignments of error filed by the defendant, United States Fidelity & Guaranty Co., and wanted to get his reply brief filed within the rules fixed by this court and that it became necessary for him to have the record so that he could file his reply brief before taking his vacation trip; that he obtained the record on the 3rd day of July and returned it to Decaturville on the 4th day of July, and this state-

ment is corroborated by the other attorney for complainant. By the motion of complainant the rule of this court is invoked, and under the statements contained in the affidavits, this motion must be sustained. It results, therefore, that the decree of the Chancellor will be affirmed as to the defendants J. L. White and Mrs. Bess Sykes.

There remain the assignments of error of appellant, United States Fidelity & Guaranty Co., to be considered and disposed of.

Appellant, United States Fidelity & Guaranty Co., has assigned two errors to the action of the Chancellor in rendering judgment against it, as follows:

"1.

"The Chancellor erred in overruling the demurrer as to defendant Guaranty Company, because it appeared upon the face of the bill that complainant stated no equity that would entitle him in any event to a decree against and a recovery from it.

"2.

"The Chancellor erred in giving complainant his decree against defendant, Guaranty Co., because his finding that the fund did not belong to J. A. Sykes indicated its non-liability and entitled it to a dismissal of the bill as to it."

As to the first assignment of error by this appellant which goes to the action of the court in not sustaining the demurrer, we are of the opinion that this assignment cannot be sustained. Before any action was taken on the demurrer appellant filed an answer, and in which it did not set up any of the defenses relied upon in the demurrer. This demurrer was directed to the whole bill, and the filing of an answer before any action was taken on the demurrer, and without even asking that the demurrer be disposed of, operated as a waiver. It is true the Chancellor in the final decree seemed to have considered the demurrer by stating that the demurrer was overruled. This was overruling the demurrer in general terms, and hence there was no adjudication except that there was sufficient equity in the bill to require an answer. Lumber Co. v. Cross, 126 Tenn., 695, 151 S. W., 51. In the rejoinder brief filed by this appellant, in discussing this assignment of error it is stated:

"We frankly do not really consider the ground of the demurrer that is involved in the contention that we are making here, viz., that there was no equity on the face of the bill, sufficient under our statute and the decisions relating thereto. . . . In other words, we assign the court's action on the demurrer on that ground on the idea that if we did not do so it might be considered as inconsistent with and possibly affecting

our right to question the correctness of the decree on the ground set up under assignment II."

By the second assignment of error it is contended that the defendant surety company, as surety on the bond, cannot be held liable under the facts of this case, because the Chancellor found from the facts and so decreed that the fund involved in this suit did not belong to J. A. Sykes, but that it belonged to G. W. Sykes, and therefore it was no part of the estate of J. A. Sykes, deceased, and cites and relies upon in support of this contention the cases of Morris v. Morris, 56 Tenn., 814; Sanders v. Forgasson, 62 Tenn., 249; and Hardison v. Billington, 82 Tenn., 346, wherein it was held that the principal was not liable as administrator or executor for funds which he received and misapplied that were not assets of the decedent's estate, but belonged to others, and that this was true even though the administrator charged himself with the same in his inventory of assets.

In the case of Morris v. Morris, supra, among other questions decided by the court it was held that at the death of the husband, property exempt from execution goes direct to the widow. The administrator has no control over it. If he interfere with or convert it, he is, individually, liable as a wrong-doer; but not on his bond, and hence his sureties are not liable as such.

In Sanders v. Forgasson, supra, the sixth headnote states:

"Where the executor of a guardian concedes that assets returned in his inventory consisted of notes and claims payable to his testator individually, but that in fact, they were claims bought with the funds of his wards, and, therefore, belong to them, if the sureties of the guardian who have been liable seek to hold the executor and his sureties the court say: 'That the executor himself is so responsible to the surety of the guardian may be conceded, upon the ground that he admits that they came into his hands, and he undertook to administer them as assets of the estate; but his sureties, as executor, can only be held responsible for the faithful administration of the assets which actually belong to the estate, and they are not precluded by his return in his inventory from showing the truth of their ownership.' "

In the case of Hardison v. Billington, supra, under the fourth headnote it is said:

"Exempt articles and effects set apart to a widow for her year's support vests in her, and if the administrator converts any of the articles, her remedy is against him as an individual."

Appellee contends that the case of Sanders v. Forgasson, supra, being the case of an executor and not an administrator is not au-

thority for the contention of appellant on this question. We can see no distinction between the liability of sureties on a executor's bond and sureties on an administrator's bond, and the holding in that case is clearly in accord with the holding in the case of Morris v. Morris, supra. Appellee further contends that the later case of Clark v. Pence, 111 Tenn., 20, 76 S. W., 885, wherein the sureties on the administrator's bond were held liable, is more directly in point. In that case the sureties on the administration bond of D. S. Northington filed the bill quia timet, to be exonerated from liability of funds collected by said administrator belonging to the estate of another deceased person, Pleasant Witt. The bill conceded that the sureties were liable for all assets that came into the hands of the administrator belonging to the estate of Julia Pence, but alleged that the administrator had also collected funds due to the estate of said Witt, and not to Julia Pence, deceased. The bill was filed by the complainants as sureties on the bond praying to be relieved from liability for funds collected by the administrator but which did not belong to the estate of his intestate. In the opinion it is stated that the theory of the bill is that complainants had become bound as sureties on the bond of Northington, executed as administrator of Julia Pence, deceased, and that as such administrator, Northington had no authority to collect notes which had been executed to Julia Witt, as executrix of Pleasant Witt, deceased, her first husband. The bill in that case further alleged that the intestate had no estate of her own, the personalty owned by her having been reduced to possession by her husband after their marriage. The contention in that case was made by complainants that the notes in question were assets of the estate of the first husband, executed and payable to Mrs. Witt, as the executrix under the will of her first husband, and that upon her death they could not legally pass into the hands of her administrator, but pass to the administrator de bonis non of the estate of the first husband; that either the administrator de bonis non of Pleasant Witt's estate or the administrator of Julia Pence's estate had the right to take charge of these assets under the authority of Abingdon v. Tyler, 6 Cold., 502, and Wood v. Tomlin, 92 Tenn., 514, 22 S. W., 206, and it was upon this theory that the court held that the sureties were liable. In that case the further question was made that complainants were not entitled to be relieved as sureties, because their bill on its face alleges that the decedent at her death had no estate of her own, and no estate whatever except what come to her hands as executrix of her first husband, and, if so, complainants knew or ought to have known this fact; and yet they became sureties on the bond of the administrator, and thus enabled him and put it in his power to collect these notes, and hence they are now estopped to

deny their liability as sureties on his bond. The court sustained that contention, and on that ground also denied the relief sought by complainants, that is, to relieve the sureties on the administrator's bond. However, under the first proposition the sureties were held liable because either the administrator of Witt's estate de bonis non, or the administrator of Mrs. Pence's estate, could maintain an action to recover on the notes in question, and therefore the assets in that case were properly in the hands of the administrator as such, so as to make the sureties on his bond liable.

In the case of Patterson v. Tate, 141 Tenn., 607, 213 S. W., 981, among other questions decided was the question of liability of sureties on the administrator's bond for money received by the administrator from a railroad company in settlement of claim against it for the wrongful killing of the intestate of said administrator, on the theory that the sureties of the administrator could not be held liable because such fund did not constitute any part of the estate of the intestate. The court in that case refused to sustain this contention, and held the sureties on the bond liable. This holding is also on the theory that the administrator had the right to maintain the action, even though the recovery would go as directed by statute. To the same effect is the holding in Glass v. Howell, 2 Lea, 50.

We are of the opinion that by a decided weight of authority both in this state and in other jurisdictions, sureties on an administrator's bond cannot be held liable for assets coming into the hands of the administrator which did not belong to or constitute any part of his intestate's estate, and that the administrator alone is liable for the wrongful conversion of such assets. Morris v. Morris, supra; Sanders v. Forgasson, supra; Hardison v. Billington, supra; Campbell v. American Bonding Co., 172 Ala., 458, 55 So., 306; Bradford v. Watson, 65 Fla., 461; Newton County Bank v. Bonding Co., 141 Ga., 326, 80 S. E., 1003, 50 L. R. A. (N. S.), 1089; Peo v. Petrie, 191 Ill., 497, 85 Am. S. R., 268; Costigan v. Kraus, 158 Ky., 818, 166 S. W., 755; Orick v. Vahay, 49 Mo., 428.)

However, it is contended by appellee that appellant cannot now make this question, for two reasons. First, because its answer did not make this defense, but on the contrary specifically alleged that this money on deposit in the bank in the name of J. A. Sykes belonged to J. A. Sykes at the time of his death and therefore properly came into the hands of J. L. White, as the administrator of J. A. Sykes; and that the answer further alleged that the administrator of G. W. Sykes did not have any right or claim to this money; and in specific language denied that said money belonged to G. W. Sykes at the time of his death. The second contention is made by appellee that J. A. Sykes' administrator knew that J. A. Sykes did not leave

any estate at the time of his death and that the surety on the bond knew or should have known that J. A. Sykes did not have any estate to be administered at the time it became surety on the bond, except the claim that the fund involved belonged to J. A. Sykes' estate, and by becoming surety on said bond enabled J. L. White to obtain said fund from the bank and appropriate it.

As to the first contention made by appellee, to the effect that the appellant surety company is now estopped from making the question in this court that it is not liable because of the holding of the Chancellor that the money involved did not belong to the estate of J. A. Sykes, we find that this question is made for the first time on this appeal by the surety. The answer in specific terms denies that this money belonged to G. W. Sykes, and specifically alleges that it belonged to the estate of J. A. Sykes and went properly into the hands of the administrator of J. A. Sykes. If the appellant desired to rely upon this defense it could have done so effectually by demurrer, because the original bill specifically charged that this money in the Bank of Commerce at Parsons belonged to the estate of G. W. Sykes, and set out in detail how the account was carried and the source from which it was derived. The appellant did not make that a ground for the demurrer. There is no mention in the answer that it would seek to avoid liability as surety on the bond on the theory that the money involved did not belong to the estate of J. A. Sykes.

The answer of this appellant simply denied liability as surety on the bond, but this denial was predicated in the answer on the theory that the administrator of G. W. Sykes was not entitled to this money, but that it in fact belonged to J. A. Sykes, and that the administrator of J. A. Sykes was entitled to receive it and to administrater upon it.

We are of the opinion that this question cannot be made for the first time in this court. The Chancellor should not be put in error on any question that was not relied upon either in the pleadings or proof by this appellant. He had the opportunity of making this defense both by demurrer and by answer, but did not do so. It would be permitting parties to experiment with the court, and seek to avoid liability on grounds relied upon in the lower court, and if not successful, then to rely upon other and different questions on appeal to this court. In this view of the case, we are of the opinion that the assignments of error of appellant, United States Fidelity & Guaranty Company, must be overruled, and the decree of the Chancellor affirmed as to all appellants.

The cost of this appeal will be paid by the appellants and sureties on the appeal bond, and the judgment decreed by the Chancellor is affirmed and judgment rendered here for the amount of the judg-

ment below against all the defendants as decreed by the Chancellor, and judgment is rendered against the surety on the appeal bond of the appellant, United States Fidelity & Guaranty Company, for the amount of judgment decreed against it.

Heiskell and Owen, JJ., concur.