*1 Opinion op the Coubt, by
Judge Owsley.
ON the 8th of April 1811, Henry C. Clay, together with Charles Grimes, his surety, executed to the moliwealth a bond in the penalty of four thousand dol-iars, conditioned to be void, “ if the said Henry C. Clay, his heirs, executors and administrators, shall well and truly pay and deliver to George Clay, orphan of Samuel Clay, deceased, of whom he is appointed guardian, all such estate as there was or should thereafter appear to be due from him to the said orphan, when he should attain to lawful age to demand the same, or when thereto required by the said county of Bourbon for the time being; and should also faithfully execute his office therein, in such a manner as to save harmless, and indemnify the said justices, their heirs, executors and administrators, from all trouble or damage that might arise about the said estate.”
Upon this bond suit was brought-.against Grimes, in the name of the Commonwealth, for the use and benefit of the ward, George Clay; and in the declaration breach of the condition of the bond is assigned, in the failure of .the guardian, Henry C. Clay, to deliver over to George Clay, or to nav him the amount of an obliga- ' *2 tion which was given to said Henry C. Clay by Ren ja» m^n and Anthony Thornton, for three hundred and seventy seven dollars, seventy-seven cents and seven mills, and payable the 3d of October 181G, being the distributive share of said George Clay, of the proceeds a sa^e decreed by the Bourbon circuit court, of the real estate of his brother, Samuel Clay, deceased, from whom it descended to the said George and others, al-(h0Ugp .(0 deliver the said obligation, or to pay the amount thereof, the said Henry C. Clay', by the said George, after he arrived at full age, was requested, and particularly on the-day of-, in the circuit, &c.
To this suit Grimes failed to appear and make de-fence, and upon the execution of a writ of inquiry, live hundred and two dollars and forty-three cents damages were assessed against him, and judgment accordingly thereupon rendered in favor of the Commonwealth, for the use and benefit of George Clay.
The damages were assessed, and judgment rendered, oh the first day of April 1822, and afterwards, ou the 9th day of the same month, being a subsequent day of the same term, Grimes appeared in court, exhibited his affidavit, and moved the court to set aside the assessment of damages and judgment, and award him a new trial; but his motion was overruled, and exceptions were taken to the opinion of the court.
In his affidavit, the only defence which Grimes suggests a desire to make, and which he supposes would he availing, if permitted to make it, is contained in the transcript of a record which he exhibited to the court in connexion with his affidavit.- He states that he was sued in several cases of great interest to him, in the Fayette circuit court; that on the 25th of March, (it: being the first day of the term of the Clarke circuit, court, in which this cause was pending,) lie went to Lexington, (the Fayette circuit court being then, and having been for some time before, in session,) for the purpose of ascertaining on what day of the term the suits against him'would probably be tried, intending, immediately upon receiving that information, to return to Winchester, and employ counsel and prepare for the defence of this case; that upon arriving at Lexington, lie was summoned by the sheriff as a juror, for the trial of a cause, and the jury not agreeing, was not discharg *3 eel until the 30th of that' month, being Saturday; that upon being discharged, he learned from the state of the docket, that the suits in that court against him would certainly be called for trial the succeeding Monday, and from the magnitude of those cases, was bound to. return on Monday to Lexington. He further states,. that if it had not been for his unexpected detention on the jury, he would have been prepared with his de-fence to this case, before it was called for trial; that he resides thirteen miles from Lexington, the same distance from Winchester, and twenty-four miles from Paris, and that if he had not been detained, at Lexington on the jury, he could, after returning to Winchester, have obtained the transcript of the record from Paris,' before the trial, &c.
From the transcript of the. record which was made to accompany the affidavit,, it appears that the obligation which the declaration alleges Henry C. Clay failed, ¡¡to deliver over or pay to George Clay, was the said Geo.rge Clay’s proportion, as one of the heirs of Samuel Clay, deceased, of the proceeds of a sale of the said decedent’s real estate, decreed by the. Bourbon circuit court, upon-the petition of Henry C. Clay, guardian’ for the said.George Clay, under the act of the legisla.-ture of this country, of February 181.3, regulating such proceedings; and that before the sale was decreed, in pursuance to an order of the Bourbon circuit court, the said Henry O. Clay executed bond and security to. the said George Clay, conditioned, as required by the.provisions of that act.
If the facts contained in this transcript of the record be admitied.sufficient to constitute a legal.bar to the action which was brought against Grimes, we should have no hesitation in affirming that a new trial ought to have been awarded. That defence Grimes was prevented, making, not from a neglectful inattention to’ the preparation o.f his cause for trial, but from the observance of a duty which he was unexpectedly summoned'to discharge, and which he was necessarily bound, to perform. The transcript of the record, it is true, might-have been obtained, and counsel employed by Grimes, before he was summoned as a juror in Fayette; but it. is equally true, that if he had not been there, detained, he would have had sufficient time, after returning -to. Winchester, to employ counsel and procure the Iran- *4 scrip!, before his cause .was called for trial; and it has never been thought necessary, to avoid the imputation, ' of negligence, that a suitor should, immediately after becoming engaged in litigation, employ the first possible opportunity in preparing his cause for trial.
• But, admitting the apology of Grimes sufficient to excuse his absence from court at the trial, the question occurs; would the matter which he now desires an opportunity of employing in his defence, have been availing, if urged on the trial in the court below? And here it is proper to premise, that according to no existing law at the date of the bond 'upon which this action is founded, could any court of equity have pronounced such a decree as that alluded to in the transcript of the record,- and under which the demand for. which a recovery is sought in this action, was received by Henry C. Clay. That decree, as we have already observed, was for the sale of land which had descended upon George Clay, &c. and was pronounced by theBourbon circuit court under the authority of an act of the legislature of this country, which passed in February 1813, 2 Digest 66a.
It would, therefore, seem necessarily to follow, that as the demand for which a recovery is sought in this action, could not have been legally received by Henry C. Clay, when he was appointed guardian, in requiring a bond of him for the faithful discharge of his duties as guardian, the law cannot have intended demands of that sort should be comprehended. ■ In permitting the estate of infants to be committed to the care of guardians, the law has cautiously guarded the interest of the wards, not only by requiring bond and'security of the guardians, but, moreover, by imposing upon the justices of the court taking such bond, personal liability, in case of insufficient security being taken. But how is the sufficiency of the security to be judged of by the .court taking the bond, otherwise than by fixing an estimate upon the estate committed to the guardian? And how, in making that estimate, is it possible for the court to anticipate future changes in the law, and consider the value of property over which, at the time, the •guardian possessed no control, but which, by subsequent enactments of the legislature, might be placed in, his hands?
*5 But, admitting the law not to require of a guardian a bond more comprehensive than we have Supposed, it may possibly be .thought by some, that, the'bond which was given by Clay and his surety, Grimes, 1^ of more comprehensive import. That bond is conditioned to ki payand deliver to George Clay, of whom híenry C. Clay was appointed guardian, all such estate as there was, or should thereafter appear due from him, \he said Henry C. Clay,.to the said George Clay;” and if may he said, that although, when the bond was given) a demand, such as that for which this suit is brought, could not have been received by Henry C. Clay, as guardian for George Clay; yet, under the authorify of an act of the legislature of this country, since enacted, he, as guardian, has in fact received it; and it may've urged, that under that receipt Henry C. Clay became indebted to George Clay the amounfthereof, and being so indebted, is hound, according to the express condition of his bond, to pay the same to the said George. Clay.
. If, however, we are correct as to the nature and extent of the obligation which the law required to be taken of Henry C. Clay, as guardian, such a latitudi-nous construction of (hose expressions contained in the condition of the bond, cannot be permitted to prevail. The requisitions of the law regulating the execution of such bonds, will be more literally fulfilled, and no violence done to what was most probably intended by the parties, by restricting the import of those expressions in the bond, to such estate of the infant, George Clay, as might, according to the law in force at the date of the bond, be rightfully received by the,said Henry C. Clay in his general capacity of guardian, and which might at any time be due from him in that character. And such seems to have been the construction which, the legislature of 1813 supposed would be given to the bonds of guardians previously executed; for although, by an act of that date, the legislature have authorised the circuit courts, on the petition of guardians, to decree the sale of the real estate of their wards, it appears not to have been contemplated by the makers of the law, that'the proceeds of such a sale should be received by the guardian upon his general liability for the .estate of his ward; but, to the contrary, the act contains an express prohibition against the making any such decree, “ un *6 less the guardian or guardians of the infant of infants ^ave previously entered into,' and acknowledged * before, and deposited for safe-keeping with the clerk of the court, a bond or bonds to such infant or infants, with good and sufficient security, to be approved ,of by the court, and in such penalty as the'court shall direct, conditioned to discharge faithfully, all the duties imposed on him or them by the act, or by any order or decree of the court in pursuance thereof,” &c.
Note. — Tho responsibility of sureties, is now, more than ever-heretofore, an interesting question in this country, and will, I presume, fully justify me in embracing this opportunity of presenting tlio leading oases, both'in England and America, on the subject.
There is a distinction between the cases whore a man is, and mu=t necessarily be known to be a security, and security only, and-the cases in which he may be either security only, ora principal obligor. Securities for executors, administrators and guardians; securities in injunction, replevin and forthcoming bonds; securities for all public officers; and, in general, securities for the performance of all kinds of duty or service, public or private, are of the former character. Of the latter, are sureties in bonds<for the payment of money or property, given in the ordinary intercourse of private life. In these oases, the obligee generally does not know, and has no means of certainty knowing whether the person who first signs the bond receives tho whole consideration to his own use, or whether ho shares it with the others, or whether ho who receives tho whole does not give tho others a mortgage on that or other property, so as to completely indemnify them; consequently, injustice will rarely be done, in considering all the obligors as principals, ill relation to the creditor.
As to that class of securities who can be known as sureties merely, the rule of law is, that “ the contract shall bo construed strictly, and in their favor, and shall not be extended by implication.” it appears to me, that many of the cases will warrant this addition to tho rule, that.general expressions in the contract shall be restrained in their application, to the state of tilings which was probably contemplated by the sureties at the time they entered into the engagement; though, perhaps, this will be considered as implied in that part oftho rule which requires them to be construed in favor of tho sureties.
The cases which appear to mo, not only to support the preceding case, but the above doctrines to their full extent, are the following; Lord Arlington vs. Merrick, 2 Saunders 411; Ilorton vs. Day, ibid, in notis; Wright, vs. Russell,3 Wils. 530,.2 Black. P^ep. 934; Ship vs. Hay, 3 Atk. 91; Barker vs. Parkor, 1 Term B.ep. 287; Barkley vs. Lewis, ibid, in notis; Stratton vs. Iiastall, 2 Term Rep. 336; Ludlow vs. Simond, 2 Caine’s N.Y. Cases in Error, 29, 57; People of New-Yorlc vs. Jansen, 7 John. 332; Walsh, vs. Bailie, 10 John. 182; Union Bank vs. Clossey, 10John.271; United States vc. Giles and his securities, 0 Cranoh 213. . ■
The judgment must, therefore, be reversed with costs, the cause remanded to the court below, and further proceedings there had, not inconsistent with this opinion.