JUDGE PRYOR
delivered the opinion of the court.
George M. Priest, by an order of the Henderson County Court, was appointed administrator de bonis non of the goods, etc., of David Unselt, deceased, and as such executed the bond required by law with Isaac Sheffer, his surety. The intestate was the owner at his death of two houses and lots in the city of Henderson that were taken possession of by Priest, the administrator, and rented out for several years. The infant children of Unselt, by their guardian, W. H. Wilson, instituted this action against Priest, the administrator, and R. T. *217 Walton, the administrator of Sheffer, who was the surety of Priest, to recover the rents collected by the latter, alleging the collection by him of a large sum of money from the rents of this real estate, and his failure to pay the same to the guardian or those entitled.
It is evident that the report of the commissioner is based to some extent upon the testimony of Priest, the administrator, and the question arises, is he a competent witness against the appellants, who are both infants ?
Section 22'of the chapter on Evidence, General Statutes, page 413, provides that “No person shall be disqualified as a witness, in any civil action or special proceeding, by reason of his interest,” etc.
Section 25 provides that “ No party shall be allowed to testify by virtue of section 22 in any action or special proceeding where the adverse party is deaf and dumb, or an infant, unless the infant testifies in his own behalf,” etc.
Subsection 1 of section 25 provides that “In actions or special proceedings with the executor, administrator, guardian, or trustee of infants, heir, or devisee, as above specified, a party may testify to facts which occurred after the death of the decedent or parent.”
It is insisted that under this subsection the administrator (Priest) is a competent witness, the facts about which he testified having transpired since the death of Unselt, the father of the infants. This position might be maintained in the event the litigation was with the guardian in behalf of the infants in relation to transactions originating between the party called on to testify and the decedent, or growing out of matters connected with the settlement of the estate of the intestate, or in a case where the guardian was seeking to recover by reason of a contract made by him for the infantsi
It is true the claim of the infants originated after the death of their father, but it has no connection whatever with any *218 transaction between the decedent and the administrator, nor does it relate to any claim that the intestate in his lifetime could have asserted against Priest, the witness. The houses and lots descended to the infants, and the liability to pay the rents collected by the administrator was primarily to the infants, and never existed until after the father’s death. These rents constituted no part of the intestate’s estate in the hands of the administrator, but belonged to the infants; and the administrator, instead of collecting the profits or rents from the realty of the intestate, was collecting rents from the lands of the infants.
At the time this rent accrued the infants had no guardian, and the fact that the liability to the infants originated after the death of the parent does not make the adverse party a competent witness. This right to testify must arise from some right asserted by the guardian or representative of the infant, or claim against him growing out of liabilities or transactions between the adverse party and the parent of the infant or those from whom the right of the infant is derived or the responsibility assumed. Where the transaction is with the guardian or trustee of the infant, or where the facts transpire after the death of the infant, in a controversy with the personal representative, guardian, or trustee, in such cases the adverse party under the statute would be a competent witness. If the construction is given the statute as is maintained should be by the appellee in all cases where the parent dies before the infant, the adverse party to the infant would be allowed to testify. Such a construction does violence to the meaning and intention of the law-making power in enacting the 25th section of the act in question.
The appeal has been prosecuted in this case by the infants or their guardian for the reason that the testimony of Priest, the administrator, was incompetent as against them. As the testimony of Priest should have been excluded, and the judg *219 ment on that account must be reversed, it becomes necessary to determine the liability of the surety for the rents collected by the administrator. If the surety is not liable for the rent, the reversal of the judgment by which Priest’s testimony is to be excluded ought not to increase the surety’s responsibility or authorize the judgment against him.
There is now a joint judgment against the administrator and surety. No appeal has been prosecuted by the surety or cross-appeal prayed, except in the brief. The motion for a cross-appeal should have been made in open court and before the cause was submitted. A demurrer, however, was filed by Walton, the administrator of the surety, to the petition and overruled; and counsel having argued this point in their briefs, and as the case must go back for further preparation, it is proper to determine the liability of the surety.
At the common law, if the landlord died before the rent became due it passed to the heir, but if payable at his death it passed to his personal representative as part of the personal estate. The administrator had no right to take charge of or control the realty; and if he did so, while his own liability can not be questioned, the surety on the administration bond is not liable, for the reason that the rents were not assets that, as administrator, he had the right to receive. (Smith v. Bland, 7 B. Monroe, page 21; 3 Kent, 580.)
The bond given by an administrator under the provisions of the Revised Statutes, in force when this liability on the part of Priest originated, differs to some extent from the bond required prior to their adoption. One of the stipulations of the bond in this case is that “the administrator will well and truly make a proper distribution of any surplus money, effects, and rents which may come to his hands, or to any one for him by color of his office, to the person entitled thereto.” A bond with a similar covenant is required to be executed by the provisions of the General Statutes.
*220 It is argued by counsel for the appellant that the covenant of the administrator requiring him to account for rents, etc., makes his surety liable for the rents of the land leased by the administrator, and collected by him after the death of his intestate.
The following enactments are to be found in both the General and Revised Statutes. Section 26 of the Revised Statutes (page 507) provides that “an estate held by a deceased person for the life of another shall go to the personal representative of the deceased and be assets in his hands, and be applied and distributed as personal estate.” Section 30 of the same chapter provides that when a person who has a freehold or other uncertain estate in lands, shall rent out the land and die before the rent becomes due, the rent of the land shall be apportioned between the personal representative of the deceased and the person who shall succeed to the land as heir, etc., unless in case of a devisee the will shall otherwise direct.
These enactments changed the common-law rule as to what constituted assets in the hands of an administrator. But neither of these sections makes the surety of an administrator liable for moneys, choses in action, or rents that did not belong to the intestate.
The personal representative being entitled to all the rent when his intestate held an estate for the life of another, and to an apportionment of the rent between him and the heir, or those entitled, when the owner of the fee or freehold had rented out the land and died before the rent became due, it was doubtless thought necessary to insert a stipulation in the bond requiring the personal representative to account for rents, in order to conform to the provisions of the statute making rents in certain cases assets to be administered by the personal representative, and for the additional reason that prior to these enactments this court had always held that the surety was not bound for rents collected by the administrator accruing after the death of his intestate.
*221 The statute of 1797, it is true, required an apportionment of the rent between the personal representative and the heir; still the Revised Statutes enlarged the rights of the administrator over the real estate of his intestate by making an estate held by the decedent for the life of another, assets in his hands, althohgh the intestate left children or heirs surviving him.
It 'may also be argued that when the intestate holds the obligation of the tenant for rent, and dies before it falls due, that such a writing passing into the custody of the administrator, like any other chose in action belonging to the intestate, if collected by him is to be regarded as assets in his hands, for which his surety would be liable; and with this view the word rents may have been inserted in the bond.
It is not necessary, however, to determine what influenced the legislature in prescribing the present form of the bond to be executed by an administrator. It could not have been intended that the word rents inserted in the bond should make the surety liable for rents accruing to the administrator by reason of his contracts made with the tenant after the death of his intestate. The words moneys and effects are used in the same covenant, and it will scarcely be insisted that the sureties are to be held liable for all the moneys and effects the administrator may get hold of that of right belonged to the heir ■ during the continuance of his administration.
. If the surety is made liable, in that case it must be adjudged that this special covenant has changed the whole doctrine of liability on the part of sureties to such instruments. A bond containing the stipulation only that the administrator zoould toell and truly administer the goods, chattels, credits, and effects of the intestate according to law, and distribute any surplus assets to the distributee, or those entitled, which may come to his hands by color of his office, would impose on the surety the same liability that he now assumes when signing the bond prescribed by the statute.
*222 In attempting to charge the surety with the moneys, effects, and rents the inquiry at once arises, what effects and rents is the surety liable for? The stipulations of the bond do not determine this question, and the only mode of arriving at the extent of the liability is to ascertain what moneys, effects, and rents are assets in the administrator’s hands. It certainly is not the moneys, effects, and rents belonging to the heir, but such only as pass to the administrator as assets at the common law and by statute. The rents that were assets in the administrator’s hands by law the surety would be liable for, and when not assets, the administrator becomes personally liable to the party entitled.
If the legislature intended to make sureties on such bonds liable for rents other than such as had been declared by the common law and statute, the liability would have been fixed by the same statute, and not left to be implied from the use of a word inserted in the form of a bond to be executed by the personal representative. That he collected the rent by color of his office might be held to apply in a case where the written evidence of the claim passed to the administrator, and was collected by him as any other chose in .action belonging to the intestate; but it can not be held to extend further with no other light to guide judicial inquiry than the use of the word rents in the bond.
This court held, in effect, the same doctrine in the case of Rank v. Hill’s adm’r (8 Bush). The principal question in that case was whether the word freehold used in the statute was to be restricted in its meaning to an estate for life, or so extended as to include an estate in fee-simple. It was adjudged that it embraced within its meaning both estates, and also that rents accruing after the death of the intestate did not pass to the administrator except as provided by the statutes already referred to. It results, therefore, that the allegations of the petition contain no cause of action against the surety.
*223 It is proper to suggest that as the rents accrued to the infants, the action should be prosecuted in their name by their guardian or next friend; but as one of the infants had no guardian when the action was instituted, and as this infant sues by his next friend, a general demurrer could not have been sustained, for the reason alone that the guardian had instituted the action in his own name for one of the infants, instead of the infant suing by the guardian. Upon the return of the cause the petition should be amended as to the infant William Unselt, making him one of the plaintiffs, by his guardian, W. H. Wilson.
The judgment of the court below is reversed, and cause remanded for further proceedings consistent with this opinion.
Judge Copee dissents from this opinion in so far as it determines that the surety is not liable for the rents.
In response to the petition op appellants’ counsel eor a rehearing, JUDGE PRYOR delivered the eollowing extension op the opinion oe the court:
In the case of Harmon v. Ross’s adm’r (MS. Opinion, Winter Term, 1869), relied on by counsel for the appellees, the appellants in that case had rented a tract of land and a ferry from the administrator, and executed to the latter their note for the rent, and when sued by him denied his right to recover, as he had no authority to rent the farm. This court in that case said: “ The appellants have failed to bring the heirs before the court or to have them interplead so as to have the question judicially determined to whom the money should be paid. There is no averment in the answer that the administrator who sues is insolvent, and no facts alleged from which it appears that appellants will be responsible to the heirs after they shall have paid the money to the administrator. The answer may be true, and the adult heirs and the guardian of those who ai’e infants may have approved and ratified the contract made with the administrator for the rent.”
*224 The case was thus disposed of upon the pleadings, but the court proceeds to say that the form of the bond prescribed by the statute "is that the administrator “ will well and truly make a distribution of any surplus money, effects, and rents which may come to his. hands, or to any one for him by color of his office, to the persons entitled thereto. As therefore these rents, when collected, will come to his hands by color of his office, he and his sureties will be liable on the bond.”
The attention of the court was evidently called more particularly in that'case to the state of the pleadings than the liability of the sureties on the administrator’s bond. Neither the sureties nor heirs were before the court; and the appellants, after the execution of the note to the administrator and the delivery by him to them of the possession of the land and ferry, attempted to avoid a recovery by the simple denial of his right to maintain the action.
The words inserted in the bond, “ will well and truly make proper distribution of any surplus money, effects, and rents which may come to his hands, or to any one for him, by color of his office,” can not be held to embrace an estate that has passed to the heir, whether adult or infant, or to moneys and effects that belong to others than the intestate, and to which the administrator has not even a color of right. If the construction contended for is adopted and the administrator should rent out lands in his fiducial capacity belonging to the heir that did not descend to him from the intestate, it might with the same propriety be'maintained that he received the rent by color of Ms office, and his sureties were therefore liable; and so of moneys or effects received from a stranger belonging to the heir, and in which the intestate in his lifetime had no interest whatever. If the law did not designate in express terms what constituted assets in the hands of the administrator, the stipulations of the bond alone might be looked to in order to fix the liability.
*225 The personal representative agrees to administer the goods, chattels, effects, etc., of the intestate, and by the stipulations of the bond is liable for rents collected, as well as the moneys and effects of the intestate. When charged with the rent the surety looks to the statute in order to see the extent of his liability and the rent that the administrator hás the right to collect in his fiducial capacity. He may have collected rents or moneys by color of his office. As between the administrator and heir under a renting by the intestate, the latter dying before the rent falls due, the obligation by the tenant passing to the hands of the administrator, the proceeds when collected by him would be, under the statute, apportioned between the personal representative and the heir. In such a case it would be proper to hold that the sureties were liable, the administrator having an apparent right to the fund he collects.
It never could have been intended by the legislature, in using the words “color of office,” to make the sureties in an administrator’s bond liable for the income of real estate that has passed directly to the heir, and to the use or possession of which the personal representative has no color of right. The technical definition of the term “color of office,” if applied, would make the sureties liable for every act done by the administrator and claimed by the latter to have been exercised in his representative capacity. Such was not the sense in which the term was used by the law-making power. With such a latitudinous construction of the stipulations of an administrator’s bond, there would scarcely be a limitation to the sureties’ liability.
While it has been argued that the construction herein given may prove a great hardship to infants, it must also be recollected that a contrary rule would recognize the right of adults to make the surety liable on the same facts.