## Costigan v. Kraus, et al.

(Decided May 13, 1914.)

### Appeal from Campbell Circuit Court.

1. **Personal Representatives—Qualification of Debtor as Personal Representative.**—Where a debtor qualifies as the personal representative of his creditor, the debt is considered as assets of the estate in the hands of the trustee, for which he is liable on his bond.

2. **Executors and Administrators—Insolvency of Executor.**—But if the executor be insolvent throughout the period of his trust, the surety will not be charged with his principal's indebtedness.

3. **Executors and Administrators—Judgment Settling Accounts of Executor.**—Where the objections to a judgment settling an executor's accounts are general only, and no errors are pointed out, they will be treated as waived and the judgment affirmed.

4. **Executors and Administrators—Property Not Covered by Bond —When Sureties Not Liable.**—Where an executor receives property to which he is not legally entitled as personal representative, his administration bond does not cover such property, and his sureties are not liable therefor.

5. **Executors and Administrators—When Sureties Not Liable—Decedents' Estates.**—The personal estate of a decedent passes to his personal representative; his land passes to his heirs, or if he disposes of it by will, to his devisee. Unless the land is devised to the executor he has nothing to do with it, and his sureties are not liable for the proceeds of a sale thereof, which came to the hands of the executor.

6. **Executors and Administrators—When Executor Not Liable for Proceeds of Land Sold.**—Where the will made no mention of the testator's real estate, and his executor caused the land of the testator lying in another State to be sold under a decree of a court of that State for the purpose of paying debts and legacies, the surety on the executor's bond is not liable for the proceeds of the land so sold.

BRENT SPENCE for appellant.

KELLY & REGENSTEIN, HEALY, FERRIS & McAVOY, JOHN H. MARKWORTH and J. R. ARTHUR SHACKELFORD for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming on Cross-Appeal and Reversing on Appeal.

Joseph J. Humbrecht qualified as the executor of the will of his father, Joseph N. Humbrecht, in October, 1906, with the appellant Costigan as surety upon his bond.

The testator bequeathed legacies to twenty persons, aggregating $3,650.00. The residue of the estate was given to Joseph J. Humbrecht, the son.

The executor having failed to pay the legacies, the legatees brought this action on February 12, 1912, against the executor and his surety, to collect them.

The appraisers appointed by the county court valued the personal estate at $5,029.50. The executor, acting under section 3850 of the Kentucky Statutes, accepted the appraisement as his inventory, by making thereon the following indorsement:

"I hereby accept the foregoing as my inventory of the estate of Joseph N. Humbrecht, deceased.

Joseph J. Humbrecht, Executor."

The inventory included a joint note of Joseph J. Humbrecht and Fred J. Bley for $1,700.00; another note of Joseph J. Humbrecht for $700.00; a third of Joseph J. Humbrecht for $500.00; the note of Mrs. George Hagen for $988.00, and the note of Mrs. M. Kramer for $141.50. These items aggregated $4,029.50, and nothing was realized from them by the executor.

According to the executor's statement, his receipts were as follows:

Two bonds for $500.00 each.............................$1,000.00
Interest and premium on same.....................    70.00
Proceeds of sale of Oklahoma land...... 1,192.06
_____
Total receipts ...............................................$2,262.06

The chancellor being of opinion that the proof showed the presumption of solvency on the part of the executor had been rebutted, and that he and the other obligors in the notes that were not collected were insolvent, and that said notes were uncollectible, did not charge either of said notes against the executor. The judgment charged the executor with $2,262.06, as above stated; he was credited with $642.05, leaving a balance of $1,620.01 in his hands for distribution. The bequests, excluding the one to the executor, aggregated $3,650.00, thus showing that the legatees were entitled to receive 44.38 per cent of their respective legacies, aggregating $1,420.24.

The chancellor having rendered a judgment against the surety on behalf of the several legatees for their respective bequests, aggregating $1,420.24, as above stated, Costigan prosecutes this appeal. The legatees

prosecute a cross-appeal from so much of the judgment as failed to hold the surety liable for the amount of the notes the executor owed the estate of Joseph N. Humbrecht, deceased. No complaint is made to that part of the judgment which failed to charge the executor with the uncollected Hagen and Kramer notes.

1. The chancellor properly refused to charge Costigan, the surety, with the indebtedness of the executor.

In Kirby v. Moore, 30 Ky. L. R., 1022, 99 S. W., 1156, the court said: .

"The rule is well settled, that where a debtor qualifies as the personal representative of his creditor, the debt is considered as assets of the estate in the hands of the trustee, for which he is liable on his bond. Swart v. Reveal, 16 Ky. L. R., 503; Webster v. Webster, 7 Ky. L. R., 302; Howell v. Anderson, 61 L. R. A., 313, and the cases there cited."

See also, Hickman v. Kamp's Admr., 3 Bush, 206; Johnson v. Hicks, 97 Ky., 118, and Wachsmuth v. Penn. Mut. L. I. Co., 241 Ill., 409; 26 L. R. A. (N. S.) 411, with Note.

But if the executor be insolvent throughout the term of his trust, the surety will not be charged with his principal's indebtedness. Buckel v. Smith's Admr., 26 Ky. L. R., 991, 82 S. W., 1001.

Since the evidence in this case fully sustains the finding of the chancellor that the two notes of the executor, and the joint note of the executor and Bley, were worthless and uncollectible throughout the period covered by the executorship, the judgment properly relieved Costigan from liability therefor. Re Howell, 66 Neb., 575, 61 L. R. A., 318; Re Walker, 125 Cal., 242; Bancus v. Stover, 107 N. Y., 624; McCarty v. Frazer, 62 Mo., 263; Harker v. Irick, 10 N. J. Eq., 269; Rader v. Yeargin, 85 Tenn., 486; State ex rel, &c. v. Gregory, 119 Ind., 503.

2. Appellant insists it appears from the testimony of the executor that in the discharge of his duties he paid certain claims against the estate of the decedent, and that the burden is upon the appellees to show the claims were not just and should not have been paid. The statement is too general to attract the attention of the court. If appellant desired to have this court review the ruling of the trial court in passing upon any one of the many specific items adjudged in making the settlement, he should specify the items and direct the court's

attention to the evidence which he claims sustains his view. This court cannot undertake to examine each item with the view of ascertaining whether it was properly or improperly allowed or rejected. The objection should be specific in order that the court may pass upon only those claims which are in dispute; otherwise, the court would be called upon to do the work of a commissioner, and practically make up the account from the beginning. Where no errors are pointed out they will be treated as waived, and the judgment affirmed. Brown v. Daniels, 154 Ky., 268; Garvey v. Garvey, 156 Ky., 664.

3. The testator owned certain lands in Oklahoma County, Oklahoma; and it becoming necessary to sell those lands for the payment of the debts and legacies, supplementary proceedings were had in Oklahoma in the name of Humbrecht as executor, who joined with him the administrator with the will annexed appointed by the Oklahoma court, by which the land was sold and the net proceeds, amounting to $1,192.06, came into the hands of Humbrecht. The surety denies that this money was received by Humbrecht as executor, his reason for this position being a technical one, that there could be no liability against the surety on the bond of Humbrecht, executor, for the proper administration of the proceeds of real estate sold under the judgment of the Oklahoma court.

There is no provision in the will directing or authorizing the executor to sell the real estate; the will does not mention real estate.

The general rule as to what property constitutes assets of an estate, is stated in 18 Cyc., 1254, as follows:

"According to the weight of authority, where an executor or administrator receives property to which he is not legally entitled in the discharge of his duty as personal representative, his administration bond does not cover such property and his sureties are not liable in respect to it.

"The liability of the sureties on an executor's or administrator's bond is limited to such assets as rightfully come or ought to have come into his hands in the state of his appointment. Therefore, while as to all the assets which he has a right to receive and does receive, although coming from a foreign jurisdiction, the sureties on the bond will be liable, they will not be liable for such assets which he receives without lawful authority. * * *

"The liability of sureties on the general bond of an executor or administrator for the proceeds of the sale of real estate that have come into his hands is governed by the conditions of the bond. In some jurisdictions it is held that the ordinary conditions cover the proper administration of such proceeds, and that if a special bond be required it is to be regarded merely as additional security. In others, the sureties on the general bond are not liable, and a special bond must be given to cover such proceeds as a distinct liability."

The author places Kentucky in the second or last class above enumerated, and as authority therefor cites Speed v. Nelson, 8 B. M., 499, and Stuart, Receiver, v. Hathaway, 4 Ky. L. R., 438.

In Speed's Ex'or. v. Nelson's Ex'or., *supra,* Brooks devised the residuum of his lands to Neil, his executor, for the payment of his debts; and Neil, as executor, having sold the land to Beckwith and others, the question was whether Neil's sureties were liable for the proceeds of the sale of the land.

In holding they were not liable, the court said:

"The executor's sureties, however, contend they are not liable for the money arising from the sale of the real estate, it constituting equitable and not real assets.

"It was decided by this Court in the case of Loftus v. Locker (1 J. J. Marshall, 298) that the money arising from the sale of real-estate, devised to be sold by the executor for the payment of the debts of the testator, was legal assets in the executor's hands; although the land itself, before the sale, was only equitable assets. But in the subsequent cases of Helm, &c., v. Darby's administrator, (4 Dana, 186); Cloudas' executrix v. Adams, (4 Dana, 603), and Clay and Craig v. Hart, (7 Dana, 1), a different view of the law was taken; and it may now be regarded as the settled doctrine, that money arising from the sale of real estate by an executor, in pursuance of a devise or power conferred on him for that purpose, is equitable assets, constituting a trust fund, and subject to the equitable control of the Chancellor.

"Are the sureties of the executor responsible for equitable assets in his hands? This depends upon the stipulation contained in the bond given by the executor and executed by them as his sureties, and the obligation it imposes upon them. The bond was executed in 1818, and is substantially in the form prescribed by the statute

of 1797. The condition of the bond, so far as it is material to this question is: First, 'That the executor do make a true and perfect inventory of all and singular, the goods, chattels and credits of the said deceased.' Secondly, 'And the same *goods, chattels* and *credits* do well and truly administer according to law'; and, Thirdly, 'Do well and truly pay and deliver all the legacies contained and specified in the said will, as far as the said goods and chattels will extend, according to the value thereof, and as the law will charge him.'

"The undertaking by the sureties is, that the executor shall administer the *goods, chattels* and *credits* of the deceased according to law. The stipulation does not extend to lands, and the language used cannot, according to any just interpretation, be made to include them or money arising from the sale of them by the executor, in the administration of the estate, as provided for by the bond. The stipulation in reference to the payment of legacies is more comprehensive. They are to be paid by the executor, not only as far as the goods, chattels and credits will extend, but also as far as the law charge him. And inasmuch as the law would charge him with money arising from the sale of land, charged with the payment of legacies, and received by him, his sureties would be responsible for it.

"Thus, in the case of Moore, et al. v. Waller's heirs (1 Marshall, 491), it was decided, that according to the just import of the bond, the sureties are liable for all legacies for which the executor is by law chargeable, whether they relate to personal estate, or grow out of sales directed to be made of the testator's land.

"And in the case of Clay and Craig v. Hart (*supra*), it was decided, that 'the obligation imposed by the bond, being altogether legal, the sureties cannot be liable for any other breach than that of the legal duties of the executor embraced by the condition of the bond.' So far as creditors were concerned, the sureties' were liable only for the faithful administration of legal assets, or 'the *goods, chattels* and *credits*' of the testator. And, therefore, though the proceeds of land, if charged with the payment of debts, constituted equitable assets in the hands of the executor, the sureties were not liable therefor.

"The failure, in the executor's bond required by the act of 1797, to impose on the sureties a liability for the faithful performance by the executor, of all powers with

which he was invested by the testator, being an obvious defect, an act was passed in 1838 (3 Stat. Law, 239), requiring thereafter all bonds given by executors to contain a farther condition, which embraces the whole duty and powers of an executor. But this.latter statute cannot affect the liability of sureties in a bond previously given under the act of 1797.''

In Stuart, Receiver, v. Hathaway, *supra,* decided in 1882, the court further said:

''It is unnecessary to decide many of the questions raised by the appeal, as in our opinion the decision of the case must depend upon the question as to whether the appellee is liable for the proceeds of the land collected by Ray as the administrator of Pope. The legal effect of the bond upon which the appellee is sought to be made liable as the surety of Ray was determined by this court in the case of the Commonwealth v. Ray; manuscript opinion delivered in April, 1878. The bond is that usually given by an administrator, binding the obligors to answer for the personal assets that come, or ought to have come, to the hands of the administrator; and under such a bond, as decided by this court in the case cited, the surety is not liable for the proceeds of land sold under a decree or judgment, although at the instance of the administrator. The administrator, as administrator, is not entitled to the money; nor is it usual to direct its payment to him unless he is designated as the special receiver; and thus his bond as receiver creates the liability as to the surety, and not his bond as administrator. It does not appear that the administrator was ever authorized to collect this money, or that he was ever made the receiver, or that he sold the land; but on the contrary we infer from the record that the land was sold by the commissioner and the notes made payable to him. But whether so or not, the surety is no more liable under such a bond, than he would be for the rents. See Wilson v. Unselt's Admr., 12 Bush, 215.

''Nor is the surety estopped by reason of the judgment against the principal in the bond for making his defense. The judgment is against Ray and not against the surety; and while the surety may have been a party to the action and excepted to the commissioner's report of settlement, so far as Ray is concerned he was properly charged with all the moneys he received whether from land or other sources belonging to the estate; and the overruling of the exceptions was only a judgment

to the effect that Ray was liable and not the surety, as no judgment was obtained against the surety, and none asked, so far as appears from this record.

"This purports to be an action in the name of the receiver, under an order of court, on a judgment obtained against the principal, and for which the surety is attempted to be made liable, or is regarded as more properly an action on the bond with the judgment against the principal offered as conclusive evidence of the surety's liability. Still, the defense may be made and the surety will be allowed to show that he is not responsible, although his principal may be. While Ray the principal may not have received this money in his official capacity, he will not be allowed to say that his responsibility never attached because the money ought to have been paid to another, or to himself as receiver. If he received the money he is liable for it; but not so with his surety. The latter is bound by the letter of his covenant and his liability cannot be enlarged without his consent. Now it is apparent from the record that the personal assets have been accounted for; and, it is equally apparent that Ray, in his settlement, was charged with the proceeds of the sale of this land and that this constituted the basis of the judgment against him, and it is immaterial whether paid to him by the purchaser or under an order of the court the surety is not responsible for it. There may be some conflict in the proof as to the payment of debts by the administrator so as to exhaust the personal assets; and while we are satisfied the personal assets were accounted for by him, this court in a suit to enforce the judgment obtained against the principal, will not dissect that judgment with a view of finding what fragmentary portions of it can be charged to the account of the surety. In an action showing the liability of the surety by reason of the failure to account for the personalty, such questions would be the proper subject of inquiry."

It will thus be seen that Speed v. Nelson, and Stuart, Receiver v. Hathaway, *supra*, sustain the text above quoted to the effect that the surety on the general bond of an executor is not liable for the proceeds of the sale of land, coming to the hands of the executor.

And, while not so directly in point, there are many other decisions of this court which fully recognize the rule both before and after the decision in Stuart, Receiver v. Hathaway, *supra*.

Section 3838, of the Kentucky Statutes, requires a personal representative to give a bond with surety that he "will faithfully discharge all the duties of his trust."

In the case at bar Humbrecht gave a bond by which he covenanted that "he would well and truly administer according to law the goods, chattels, credits and effects that may come to his hands, or any one for him, by color of his office, which the will empowers him to sell, and make a just and true accounting of all his acts and doings therein, and would further well and truly pay and deliver all the legacies specified in said will as far as the goods, chattels, credits and other effects would extend." And he further covenanted to make a proper distribution of any surplus effects to the persons entitled thereto.

In Warfield v. Brand's Admr., 13 Bush, 94, the court said:

"The liability of a surety is always to be measured by his covenant. (Grimes v. Clay, 4 Litt., 6; Oldham v. Collins, 4 J. J. Mar., 49; Neely v. Merritt, 9 Bush, 346). And consequently the sureties of an executor can not be liable for any other breach than that of the legal duties of the executor. (Clay & Craig v. Hart, 7 Dana, 1; Speed's Ex'or v. Nelson, 8 B. Mon., 503; Neely v. Merritt, *supra*.

"In selling land in obedience to the mandatory directions of the testator, or in pursuance to a discretionary authority, given to the executors, they do not act in virtue of their office of executor, but as the mere donees of a power, i. e. as trustees. (Conklin v. Egerton, 21 Wendell, 436.) And it is because of this distinction that prior to the statute of 1838 (Lougborough, 239-240) it was uniformly held by this court that the sureties of an executor were not liable on the bonds in the form then in use for the proceeds of land sold by their principal, under power given in the will. (Helm v. Darby, 3 Dana, 186; Cloudas v. Adams, 4 Dana, 603; Speed v. Nelson, *supra*)."

And, while it seems clear that the Act of 1838 was passed for the purpose of making the bond of personal represetatives embrace the whole duty and powers of such an officer, it did not extend that duty or power, and the consequent liability, to a case of a sale of lands under a judgment of court; the extension only embraced sales of land by the executor under a power giving him authority to make the sale.

This fact is clearly pointed out in the following extract from the opinion in the Brand case, *supra*:

"The provisions of these statutes respecting executorial bonds seem to us to indicate an intention on the part of the Legislature to extend the limits of strictly executorial powers and duties; and we think we ought, in furtherance of that intention, to treat all those powers and duties conferred and imposed by the will, the faithful exercise and performance of which are secured by the executorial bond, and which pertain to the settlement of the estate and the ascertainment of the net amount and its distribution, according to the usual course of administration, among those entitled to it, as legal executorial powers and duties, and all others as trusts. By such a construction we avoid complications, and establish a standard which, though it may not conform to the doctrines of the common law, will have the greater merit of uniformity and simplicity."

And, in Heeter v. Jewell, 6 Bush, 512, the court further said:

"Generally neither the duties nor responsibilities of administrators attach to lands, except with reference to rents and emblements and interests, less than freehold estates; but they are charged with the duty of administering 'the goods, chattels, credits, and effects' of their intestates (1 Revised Statutes, 504), which do not comprehend more than general personal estate, including choses in action and *chattels real*. (1 Bouvier's Law Dict., 563.)

"Clearly then the proceeds of the land which descended to the heirs of Brumson were not assets in the sheriff's hands for which his sureties were responsible, unless the judicial conversion of the land for the payment of debts impressed its proceeds with that character. But conceding that by the sale of the land its proceeds became equitable assets, subject in the hands of the court to the payment of debts, still they were only *equitable*, not *legal assets;* and the bond of a personal representative binds his sureties only for *legal assets*, as was held by this court in the case of Clay, &c. v. Hart, 7 Dana, 1."

Again, in Harding v. Harding, 151 Ky., 402, the court recognized the rule that the proceeds of the sale of real estate *under a power*, to pay debts, are assets in the hands of the executor, the court saying:

"The testator, by his will, authorized the executor of the will to sell the real estate, and in view of the condition of the estate this was manifestly necessary. The rule is that where the land of the decedent has been sold to pay debts under a power in the will the proceeds are assets in the hands of the executor, and are a trust fund held by him for the payment of debts. (Grider v. Payne, 9 Dana, 191; Muldoon v. Crawford, 14 Bush, 132; Maret v. Robb, 91 Ky., 90; 11 Am. and Eng. Ency. of Law, 84; 18 Cyc., 189.) The proceeds of the sale of the real estate being assets in the hands of the personal representative for the payment of debts, the interest follows the principal, and is also assets in his hands."

But in all these cases where the proceeds of the sale of land have been held to be assets in the hands of the personal representative for which his bond was liable, the sale was made by virtue of a power given by the will.

In Clay v. Hart, 7 Dana, 1, the distinction was made between an express direction and a discretionary power to sell land, it being held that in the latter case the sureties are not liable, although in the former case they would be.

In Emmons v. Gordon, 140 Mo., 490, 62 Am. St. Rep., 734, it was held that the surety was not liable for the proceeds of land sold in a foreign state under a power conferred by the will, where the will was not probated in that State.

In Reno v. Tyson, 24 Ind., 56, it was held that the surety was not liable for proceeds of property which had not been sold under the directions of the will.

Likewise, under a testimentary power to sell real estate for the purpose of a reinvestment, the executor acts as a trustee, and the sureties on his administration bond are not liable. People v. Huffman, 182 Ills., 390.

And, in the late case of U. S. F. & G. Co. v. Russell, 141 Ky., 603, the court said:

"The personal estate of a decedent passes to his personal representative. The land and all that passes with the land passes at his death to his heirs, or if he disposes of it by will to his devisee. Unless the land is devised to the executor he has nothing to do with it. His sureties are not liable for rents of land. (Slaughter v. Forman, 2 Mon., 96; Chambers v. Davis, 7 B. M., 534; Heeter v. Jewell, 6 Bush, 572; Wilson v. Unselt, 12 Bush, 215; Shire v. Johnson, 18 R., 853.)"

See also, Ratterman v. Apperson, 141 Ky., 821.

In the case at bar, Humbrecht, the executor, had no authority under the will to make this sale; he did not claim any such power. On the contrary, the land was sold under the law of Oklahoma, in which state Humbrecht, as executor, had no power whatever. The sale was made upon the petition of Marshall, who qualified as administrator with the will annexed, in Oklahoma, and there gave a bond for the faithful performance of his duties. And, although Humbrecht executed a bond in Kentucky which, it has been suggested, is somewhat broader than the bond required by the statute, nevertheless, neither the statute nor the bond enlarges the power of the executor or the liability of his surety, to the extent of holding the surety liable for the proceeds of the sale of land, in the absence of a power. Heeter v. Jewell, *supra.*

The reason for the rule is apparent. The executor's rights and duties being prescribed by the law and the will under which he acts, the liability of the surety is to be measured by that standard; otherwise he would be wholly unable to know the extent of his covenant. The surety is, therefore, liable only for assets which the executor has a legal right to receive, as executor, either under the law or under the powers conferred upon him by the will.

The rule is peculiarly applicable to this case where the land belonging to the decedent was in another State, and its ownership probably unknown to the surety. If an executor can go into a foreign state or country and sell land or collect the purchase price thereof, to which he has no legal claim and thereby make his surety liable, the surety is helpless, and his bond a snare to entrap him.

We conclude, therefore, upon this branch of the case, that the court erred in holding the surety liable for the proceeds of the sale of the Oklahoma land.

4. Finally, it is insisted that the court erred in giving Maggie Kraus a judgment for $335.00, or for any sum whatever. The will gave Maggie Kraus a legacy of $800.00, and after the executor had left the state, she applied to Costigan, the surety, demanding the payment of her legacy. Costigan, after making an examination of the assets which he was advised were chargeable against him, and comparing them with the debts and legacies, estimated Mrs. Kraus' proportion at $117.55. He offered to pay her that amount in full of her claim, and she ac-

cepted the offer; whereupon he paid her that amount in full of all claims against him, taking her receipt therefor. In this matter Costigan is sustained by the evidence of Spence, his attorney, who only differs from Costigan as to the amount that was paid. That, however, is immaterial.

In his answer Costigan relied upon the settlement, and was met by the charge that it had been obtained by fraud. No attempt was made to avoid it by a plea of no consideration. And, upon the issue of fraud, there was no evidence; neither Mrs. Kraus nor any other witness having testified in her behalf upon this issue.

Under the proof, therefore, the satisfaction and release relied upon by Costigan must be treated as established; and, that being true, he owes Mrs. Kraus nothing.

So much of the judgment, therefore, as permitted Mrs. Kraus to recover anything, was erroneous.

The judgment is affirmed upon the cross-appeal, and reversed upon the appeal, with instructions to enter a judgment in accordance with this opinion.