MARYLAND CASUALTY COMPANY et al.,
Appellants,

v.

Helen McCORMACK, Individually, etc.,
Appellee.

Helen McCORMACK, Individually, etc.,
Cross-Appellant,

v.

MARYLAND CASUALTY COMPANY et al.,
Cross-Appellees.

Court of Appeals of Kentucky.

Nov. 17, 1972.

------◆------

John David Cole, Harlin, Parker, Lucas & English, Chester I. Bays, J. David Francis, Whayne C. Priest, Jr., Bowling Green, for appellants and cross-appellees.

Joe B. Campbell, Jerry L. Moore, Bell, Orr, Ayers & Moore, Bowling Green, for appellee and cross-appellant.

VANCE, Commissioner.

The judgment of the Warren Circuit Court in an action instituted in connection with the settlement of the estate of Thomas McCormack has given rise to a multitude of appeals and cross-appeals.

Thomas McCormack, a resident of Warren County, died July 29, 1967. His long-time friend, Clinton Rigsby, was appointed administrator of his estate with his will annexed. Maryland Casualty Company executed an administrator's bond in the amount of $50,000.00.

Clinton Rigsby was not only a friend of Thomas McCormack's of long standing but apparently had acted as financial adviser and consultant to him for many years before his death. Their relationship was such that when Thomas McCormack sold a parcel of real property in 1966 for $55,000.00, he turned the proceeds over to Rigsby who deposited them in his own personal bank account. A substantial portion of these funds was expended for McCormack's benefit but at the time of McCormack's death, Clinton Rigby was chargeable with $25,456.23, which belonged to Thomas McCormack.

A certificate of deposit for $10,000.00 issued by the appellee, Citizens National Bank, to Thomas McCormack in survivorship with his wife, Helen McCormack, came into Clinton Rigsby's hands. Although this certificate, after the death of Thomas McCormack, was the sole property of Helen McCormack, Clinton Rigsby endorsed it as administrator of Thomas McCormack's estate and cashed it at the Citizens National Bank. He opened an account as administrator of Thomas McCormack's estate with the proceeds of the certificate of deposit. Into this account he also deposited monthly rental payments which he collected on real estate which was owned by Thomas McCormack.

From the administrator's account he proceeded to pay many of the living expenses of the widow, Helen McCormack, and when he was removed as administrator the balance of the account amounting to $1,764.17 was paid over to Mrs. McCormack.

Clinton Rigsby was removed as administrator of the estate because of his failure to account for estate property in his possession and Mrs. McCormack was appointed to replace him.

She instituted litigation against Clinton Rigsby and Maryland Casualty Company, his surety, to recover sums for which Rigsby had not accounted as administrator. She also sued Citizens National Bank to recover the $10,000.00 wrongfully paid by the bank to Clinton Rigsby on the redemption on the certificate of deposit.

While the litigation was pending Clinton Rigsby was declared incompetent at an inquest and his son, Robert Rigsby, was appointed his committee. Subsequently, Clinton Rigsby died and his son, Robert Rigsby, qualified as the administrator of his estate. Robert Rigsby, in his capacity as committee for Clinton Rigsby, and later

as administrator of his estate, was joined as a party to the litigation.

Judgment was entered for Mrs. McCormack, individually, against Citizens National Bank for $8,432.62. The bank was awarded judgment by way of cross-claim for that amount against Maryland Casualty Company.

Mrs. McCormack was awarded judgment individually and as administrator of the estate of Thomas McCormack against Clinton Rigsby, Robert Rigsby and Maryland Casualty Company in the amount of $25,012.66.

Maryland Casualty Company filed cross-claims against Clinton Rigsby, Robert Rigsby and Mary Andrews Rigsby, the widow of Clinton, and was awarded judgment against Clinton Rigsby and Robert Rigsby for the sum of $33,445.28 and against Mary Andrews Rigsby for $3,162.15. The judgment provided that any sums paid by Clinton Rigsby or Robert Rigsby to Helen McCormack be credited on the judgment of Helen McCormack against Maryland Casualty Company and that any sum paid by Mary Andrews Rigsby to the Maryland Casualty Company under the judgment should be credited on the obligation of Clinton and Robert Rigsby to Maryland Casualty Company under the judgment.

During the proceedings Maryland Casualty Company obtained attachment against the property of Clinton Rigsby in possession of Robert Rigsby, his committee. The judgment sustained the grounds of attachment.

The contentions of the various parties presented by the appeals and cross-appeals will be discussed separately.

## THE APPEAL OF MARYLAND CASUALTY COMPANY

Maryland Casualty Company raises two issues on this appeal. First, it denies liability as surety for the failure of its principal to account for a debt owed to the decedent on the ground that the principal was insolvent throughout his term as administrator and was never able to pay the debt. Secondly, it denies liability as surety for the failure of its principal to properly account for the $10,000.00 certificate of deposit upon the ground that the said certificate of deposit was never a part of the estate of Thomas McCormack and a surety has no liability on the bond of an administrator for misappropriation of property not legally a part of the estate being administered.

All parties seem to agree that a debt due from an administrator of an estate to the decedent is an asset for which the administrator must account to the estate. The surety however is not a guarantor of the debts owed by its principal and is not liable on the bond where it appears that throughout the term of administration the fiduciary was insolvent and consequently unable to pay the debt. Cawood v. Cawood's Adm'x, 285 Ky. 201, 147 S.W.2d 88 (1941), Kirby v. Moore, 30 Ky.Law Rep. 1020, 99 S.W. 1156 (1907), 31 Am.Jur.2d, Executors and Administrators, Sections 138 and 204.

The real issue is whether Clinton Rigsby was insolvent throughout the term of his administration. The trial court held that the evidence did not establish insolvency.

Clinton Rigsby was appointed administrator on August 8, 1967, and was removed November 22, 1968. At the trial Maryland Casualty Company made no effort to prove his insolvency during that period of time and in fact did not plead insolvency as a defense until it amended its complaint after all the proof was taken. It contends however that the record conclusively establishes the insolvency.

Evidence in the record simply shows that the officials of one bank and two savings and loan institutions testified that Clinton Rigsby never had an account at their institutions. An officer of Citizens National Bank testified that Clinton Rigsby opened an account in May 1966 with a deposit of

$52,500.00. Apparently this constituted the proceeds of the sale of real property by Thomas McCormack which was turned over to Rigsby. The balance of this account was reduced to $3,378.65 by June 29, 1967.

An officer of Bowling Green Bank & Trust Company testified that Clinton Rigsby opened a savings account in that bank in May 1966 with a deposit of $7,490.00. This deposit was made with a check drawn upon the Citizens National Bank and apparently it was a transfer of a portion of the $52,500.00 deposit above referred to.

The application for the inquest at which Clinton Rigsby was declared incompetent on July 23, 1969, contained an estimate by Robert Rigsby that the assets of Clinton Rigsby consisted of personal property of the value of $3,800.00 and real property of the value of $4,500.00.

■ The appellant, Maryland Casualty Company, argues that it was established by the proceedings at the inquest that the worth of Clinton Rigsby at that time was only $8,300.00. No such fact was established. The figure of $8,300.00 was only an estimate of the value of property owned by Clinton Rigsby, and it is of little probative value on the issue of insolvency in this proceeding. We note that Clinton Rigsby in his application to Maryland Casualty Company listed assets valued by him at more than $90,000.00.

Even if the estimate of his worth by Robert Rigsby on July 23, 1969, could be taken at face value, that estimate would not be conclusive of insolvency during the period from August 8, 1967 to November 22, 1968, the period of his administration.

Maryland Casualty Company presented no evidence as to the amount or value of property owned by Clinton Rigsby during the time he served as administrator. It was not established that he had ceased to pay his debts or was unable to pay them when due and since his actual worth was

not shown, no positive determination could be made with respect to the ratio of his assets to his liabilities.

■ The burden of proving insolvency rested upon the Maryland Casualty Company. The chancellor was not persuaded and we find no evidence which would compel his decision to that effect.

In view of this disposition of the issue of insolvency it becomes unnecessary for us to consider the issue raised upon the cross-appeal of Helen McCormack that the trial court erred when it permitted Maryland Casualty Company to amend its answer after the taking of proof was completed to present insolvency of the administrator as a defense.

Maryland Casualty Company next contends that Citizens National Bank should not have been granted indemnity against Maryland Casualty Company. Its theory is that the certificate of deposit which was cashed by Clinton Rigsby was the sole property of Helen McCormack and was not a part of the estate of Thomas McCormack.

■ The liability of a surety on an executor's or administrator's bond is ordinarily limited to such assets as rightfully or ought to have come into his hands and the surety is not liable for the misappropriation of the property illegally obtained by the executor or administrator. Campbell v. Sacray, 19 Ky.Law Rep. 1912, 44 S.W. 980 (1898), Costigan v. Kraus, 158 Ky. 818, 166 S.W. 755 (1914).

■ The bond executed by Maryland Casualty Company guaranteed the faithful performance by Rigsby of his duties as administrator and went further to guarantee " * * * proper distribution of any surplus money, effects and returns which may come to his hands or to anyone for him by *color of his office* * * *." This extra-statutory covenant is enforceable against the surety according to its terms. KRS 62.060(2). Costigan v. Kraus, supra,

Hite v. Hite's Ex'r, 133 Ky. 554, 118 S.W. 357 (1909).

The surety therefore is liable upon its bond if Rigsby received the proceeds of the certificate of deposit under the *color of his office.*

An act under color of office is an act of an officer who claims authority to do the act by reason of his office when the office does not confer upon him any such authority. Smith v. Patton, 131 N.C. 396, 42 S.E. 849 (1902), Day v. National Investment Company, Missouri Appeal, 99 S. W.2d 117 (1936), Pontiac Trust Company v. Newell, 266 Mich. 490, 254 N.W. 178 (1934), 15 C.J.S., p. 356. For collected cases defining color of office see Words and Phrases, Vol. 7–A, Color of Office, p. 302.

A distinction is sometimes made between *color of office* and *virtue of office.* An act by virtue of office is one in which the act is within the authority of the officer but in doing it he exercises that authority improperly or abuses the confidence which the law imposes in him, while an act under color of office is one in which authority which does not exist is claimed by the officer. Yuma County v. Wisener, 45 Ariz. 475, 46 P.2d 115 (1935).

In the instant case Clinton Rigsby was the duly appointed administrator of the estate of Thomas McCormack. He pretended to have authority as administrator to exchange for cash a certificate of deposit which was owned solely by Helen McCormack. As administrator he did not have any such authority. His actions fall precisely within the usual definition of acts done under color of office.

Maryland Casualty Company relies upon Shelton v. National Surety Company of New York, 235 Ky. 778, 32 S.W.2d 339 (1930), wherein we said:

" 'To constitute *color of office* such as will render an officer's sureties liable for his wrongful acts, something else must be shown besides the fact that in doing the act complained of the officer claimed to be acting in an official capacity. * * * if there is at the time no statute which authorizes the act to be done without process, then there is no such color of office as will enable him to impose a liability upon the sureties in his official bond.' "

The facts in *Shelton* are not remotely similar to those in the case at hand. In *Shelton* claim was made against an officer for unlawful arrest without a warrant or with a warrant void upon its face. The question was whether the officer, in making the unauthorized arrest, was acting in his official capacity or merely as an individual. It was held that a peace officer, even though his office authorizes him to make arrests, acts in a private and individual capacity and not in an official capacity when he makes an arrest without a warrant. In *Shelton* the surety company was held not to be liable upon its bond because the officer acted in a private capacity.

There was no extra-statutory provision in the bond executed in *Shelton,* as there was in this case, which would have rendered the surety liable for acts done under color of office. It was unnecessary to the decision of *Shelton* for the court to venture into its discussion of the phrase *color of office* and we regard it as dictum not binding in this situation where the construction of that phrase is squarely in issue.

Insofar as *Shelton,* supra, and Jones v. Van Bever, 164 Ky. 80, 174 S.W. 795 (1915), place a construction upon the phrase *color of office* different from that set forth herein, they are overruled.

## THE APPEAL OF THE CITIZENS NATIONAL BANK

Helen McCormack, individually, was awarded judgment against Citizens National Bank in the sum of $8,432.62. The ba-

sis for this judgment was a charge against the bank of $11,250.00 which consisted of the $10,000.00 wrongfully paid on the certificate of deposit to Clinton Rigsby and $1,250.00 interest thereon. Against this charge the bank was credited with $2,817.38. The credit consisted of $1,764.17 which was paid directly to Mrs. McCormack and $1,053.21 which represented expenditures made by Clinton Rigsby from the proceeds of the $10,000.00 certificate of deposit in payment of personal expenses of Mrs. McCormack. In addition to the $2,817.38 which was paid directly to Mrs. McCormack or expended directly for her benefit, substantial sums were expended by Clinton Rigsby from the proceeds of the $10,000.00 certificate of deposit in payment of legitimate obligations of the estate of Thomas McCormack and Clinton Rigsby reimbursed himself from the proceeds of the $10,000.00 certificate of deposit to the extent of $4,350.00 for expenditures which Rigsby had made from his own personal bank account for the benefit of Mrs. McCormack.

Mrs. McCormack was the sole beneficiary of the estate of Thomas McCormack and she was therefore the ultimate beneficiary of all expenditures made by Clinton Rigsby in payment of estate obligations.

The bank contends that it should have been given credit for all sums expended by Clinton Rigsby to defray legitimate estate obligations and for the reimbursement to himself of expenditures made by him for Mrs. McCormack.

Although Clinton Rigsby expended $4,350.00 from his personal bank account for the benefit of Mrs. McCormack, the evidence showed that the only money deposited in his personal account was the money which Thomas McCormack had entrusted to him and for which he was accountable to the estate. Thus his attempt at reimbursement was an attempt to reimburse himself for an expense which he had never incurred.

Although many expenditures from the proceeds of the $10,000.00 certificate of deposit were in payment of legitimate claims against the estate of Thomas McCormack, Mrs. McCormack, as an individual, was not chargeable with those expenses and the Citizens National Bank was entitled to no credit for those expenditures on her judgment as an individual against the bank. She was entitled to recover from the bank the entire proceeds of the $10,000.00 certificate of deposit with interest, subject only to credit for any of those proceeds which were paid directly to her or in payment of her personal obligations and that is what the judgment awarded her.

The bank further contends the trial court erred in failing to adjudge that any payments made in the satisfaction of the judgment of Helen McCormack against Clinton Rigsby and Maryland Casualty Company should be credited in satisfaction of her judgment against Citizens National Bank. The claim against the bank was entirely separate from the claim against Clinton Rigsby and Maryland Casualty Company and no valid reason is advanced why the judgment against the bank should be credited with payments made by Rigsby or Maryland Casualty Company on the judgment against them.

The Citizens National Bank further contends that it should have been awarded judgment by way of indemnity against the estate of Thomas McCormack. There is some merit in this contention. Since the bank's liability was predicated upon its unlawful payment of the proceeds of the certificate of deposit into the hands of the administrator, a substantial portion of which was used to defray estate obligations, it seems logical that it should be permitted to recoup from the estate.

The net effect of any such recoupment however would be the creation of an even further shortage in the administrator's accounts and this of course would result in

additional liability on the part of the surety. Citizens National Bank was granted indemnity against the surety by the judgment so in the long run the surety will be held liable to satisfy the judgment against it and also the judgment against Citizens National Bank. Except in the event of insolvency on the part of the surety, the judgment as entered will prejudice neither the bank nor the surety company and in the absence of prejudice no cause for reversal of the judgment is shown.

## THE APPEAL OF MARY ANDREWS RIGSBY

 Mary Andrews Rigsby is the widow of Clinton Rigsby. Maryland Casualty Company obtained judgment against her for $3,162.15 by reason of the fact that Clinton Rigsby repaid a personal note in that amount to Bowling Green Bank and Trust Company with funds which were clearly traceable and identifiable as the property of Thomas McCormack. By reason of this payment a mortgage which Mary Andrews Rigsby had given on property owned by her as security for the note of her husband was released. The only authorities she cites to support her contention that the judgment is erroneous are Wright v. Yates, 140 Ky. 283, 130 S.W. 1111 (1910) and Crockett v. Ohio Valley Banking & Trust Company, 174 Ky. 409, 192 S.W. 487 (1917). The facts in those cases differ from the facts in this case in many particulars, the most important of which is that no funds in either of the cases relied upon could be traced or identified. We find no error in the judgment against Mary Andrews Rigsby.

## THE APPEAL OF ROBERT RIGSBY, ADMINISTRATOR OF THE ESTATE OF CLINTON RIGSBY, DECEASED

 Robert Rigsby, administrator of the estate of his father, Clinton Rigsby, seeks reversal of two portions of the judgment. He contends first that the judgment in favor of Helen McCormack against Clinton Rigsby is excessive because the court failed to allow Clinton Rigsby credit for expenditures made by him in behalf of Thomas McCormack from 1962 to 1966. The only proof of these expenditures was in the form of cancelled checks drawn on the bank account of Clinton Rigsby during the period of time mentioned which bore the notation that they were for the payment of certain expenses of Thomas McCormack. The trial court did not regard this evidence as sufficient proof of the expenditures and there was a total absence of proof that McCormack had failed to reimburse Rigsby for these expenditures if they were, in fact, made for McCormack's account. We do not think the finding of the trial court on the factual situation was clearly erroneous.

The final claim presented by Robert Rigsby has merit. When it became apparent that Maryland Casualty Company might have liability upon the bond it executed as surety for Clinton Rigsby, Maryland Casualty Company obtained an attachment against the property of Clinton Rigsby. At that time Clinton Rigsby had been declared incompetent and Robert Rigsby was his committee. The attachment was executed upon property held by Robert Rigsby as committee for Clinton Rigsby. The judgment appealed from sustained the grounds of this attachment.

The brief submitted by Robert Rigsby points out numerous defects in the attachment procedure and in the affidavit for the attachment and the authorities cited therein appear to sustain his position. The Maryland Casualty Company has not favored us with a brief addressed to this question. It is the opinion of the court that the portion of the judgment which sustained the grounds of attachment is erroneous.

The judgment is affirmed in all respects except insofar as it sustained the attach-

ment obtained by the Maryland Casualty Company. To that extent it is reversed with directions that the judgment be modified in conformity with this opinion.

All concur.