## Crockett v. Ohio Valley Banking & Trust Company, et al.

(Decided March 6, 1917.)

### Appeal from Henderson Circuit Court.

1. Husband and Wife—Payment of Debt to Wife.—The husband has the right to pay to his wife a bona fide debt which he owes her the same as he has a right to pay any other of his just debts, and where it is shown that he has collected rents from his wife's property as her agent in a total sum exceeding what he has spent in the way of either paying for property conveyed to her or improving her property, other creditors of his may not subject the wife's property or the rents therefrom to the payment of their debts because it is alleged the property was paid for or the improvements made with the money of the husband. In such case the money so spent on behalf of the wife will be regarded as a payment to her of the rents which her husband collected.

2. Husband and Wife—Suit by Bank Against Wife.—Although the husband is a defaulter, and is thereby indebted to the bank of which he was the cashier in a large sum, money which he paid to his wife after such defalcations may not be recovered by the bank

in a suit against the wife, unless it is shown that the money which the husband gave or delivered to her was that which he fraudulently obtained from the bank, and especially so when the amount which he thus paid her, together with that which he previously paid, is not sufficient to extinguish his debt to her.

3.  Banks and Banking—Payment by Check—Collection.—A check made payable to a person, or bearer, may be collected by anyone who presents it, and if it is not endorsed by the named payee, there will be no presumption that he received the proceeds of the check.

DORSEY & DORSEY for appellant.

HENSON & TAYLOR for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing on the appeal, and affirming on the cross-appeal.

Prior to March 9, 1914, Ingram Crockett, husband of appellant (defendant), was the cashier of the Planters' State Bank, a banking institution of Henderson, Kentucky. For several years previous to that date he had been engaged in the dishonest practice of extracting funds of the bank from time to time by fraudulent manipulation of the books until on the day stated he was a defaulter in a sum between $35,000.00 and $40,000.00. He secretly left Henderson, but was afterwards indicted and tried and sentenced to confinement in the penitentiary at Eddyville, Kentucky. After he left Henderson, and while he was in New Albany, Indiana, he sent to his wife, the defendant, $1,900.00 in cash. On March 5, 1914, defendant's husband drew his check on the bank of which he was cashier, payable to his wife or bearer, for the sum of $500.00. A short while before his departure from Henderson, the husband executed a note to the bank, payable in thirty days, for the sum of $6,600.00, which was signed by himself and his wife, the defendant. The husband paid $600.00 on this note, and suit was instituted against him and the defendant to recover a judgment for the balance of $6,000.00, which judgment was obtained against the husband, but the wife defeated recovery against her under her plea of *non est factum*. Execution was issued on the judgment against the husband and returned by the sheriff no property found.

This suit was filed by the plaintiff, Planters' State Bank, against the defendant, alleging that her husband had given and transferred to her of his own means not

only the $1,900.00, but that he had also, of his own means, paid for certain lands and the improvements thereon located in the city of Henderson, which were conveyed to the defendant in fraud of his creditors; that some of the improvements for which he thus paid were made on lots of real estate belonging to his wife and which greatly and materially enhanced the value of same, and plaintiff asked the court to place the property in the hands of its commissioner to be rented by him and the net proceeds applied to the items of indebtedness mentioned in the petition to the extent of the enhanced value of the property made by the husband's expenditures complained of.

Defendant's answer is a denial of all of the facts alleged in the petition entitling the plaintiff to any relief against her individually or her property, and in another paragraph it is shown that in 1899 an uncle of the defendant made a deed of gift to her of some real estate in Henderson upon which there were located two buildings with a monthly rental of $35.00, and with which she acquired the other property mentioned in the petition.

The reply is substantially a denial of the affirmative matter in the answer. The proof was taken by depositions and the case submitted something near two years after the filing of the petition. After the submission of the cause, reading of the testimony and argument of counsel, plaintiff offered an amended petition in which the statement in the original petition that the $1,900.00 was the property of the husband is withdrawn, and it is therein charged that the $1,900.00 was the property of the bank and had been wrongfully withdrawn by the husband and delivered to defendant. There had been no statement made with reference to the $500.00 check in the original petition, but in the amendment offered the same or similar allegations are made concerning it as are made with reference to the $1,900.00, and personal judgment is asked against the defendant for these two sums. The amendment was permitted to be filed over the objections of the defendant and the court rendered judgment denying the plaintiff any of the relief it asked in its original petition, but gave it judgment against the defendant for $2,400.00, being the $500.00 check and the $1,900.00 item. From that judgment the defendant prosecutes this appeal and plaintiff has prayed a cross-appeal.

It is shown that defendant's husband collected the rents from her property for eleven years prior to the summer of 1910, at which time the buildings thereon were reconstructed and a third one built on an adjoining lot which had been purchased at a cost of $1,000.00. The husband paid out of his individual means $2,700.00 for the reconstruction of the two houses and the construction of the new one on the adjoining lot, and in the same manner paid the $1,000.00 purchase price for the adjoining lot, the deed being made to his wife, the defendant. There was also conveyed to the defendant on February 21, 1912, another lot in the city of Henderson, known as the Dechamp lot, and on March 12, 1913, another one, known as the Ryan lot, and on January 25, 1913, still another was acquired by her, known as the O'Donaghue lot. The husband paid for the last three mentioned lots, $2,750.00, which, with the price of the first lot purchased, and the improvements made at that time, makes a total sum of $6,450.00, which he expended since 1899 on his wife's property and for property which was conveyed to her. The Dechamp lot was sold for $750.00, which the husband collected, and he collected all of the rents during the entire time for all of the property, making a total sum which he collected by and with the consent of his wife, and as her agent, $10,-175.00. These collections would, of course, be made from time to time as rent would accrue, and were deposited by the husband in the bank in his own name, the wife having no account in the bank. Under the facts, the court is asked to sequester the wife's property by placing it in the hands of the commissioner, with directions to appropriate the net income to the extinguishment of plaintiff's debt against the husband.

Notwithstanding the strong insistence made by counsel for the bank that we have authority to do this, he has failed to convince us of the correctness of his position. There are several obstacles in the way of granting this relief. One is that the proof conclusively shows that the husband was indebted to the wife for rents collected and the collection of proceeds of her land which she sold, and it has always been our understanding that a husband has as much right to pay a debt which he owes his wife, when clearly shown to be a *bona fide* one, as he has to pay that of any other creditor. Another reason is that all of the sums paid to the wife by the husband or

advanced by him, were made and done long before the creation of any of the debts of the husband to the bank sued on in the petition, with the exception of the item of $1,900.00, and the check for $500.00. As there is no evidence in the record of any of the payments or advancements made by the husband being actually fraudulent at the time they were made, it can hardly be contended that plaintiff is entitled to appropriate any of the rents of the property to the payment of its $6,000.00 judgment against the husband.

This brings us to a consideration of the right of the plaintiff to any relief against the defendant as to the two items of the $500.00 check and the $1,900.00. There is incidentally included in the consideration of the question of the plaintiff's right to any relief as to either of these items the action of the court in permitting the amended petition to be filed, and to which objection was made. Considerable discussion is indulged in by counsel for both sides as to the propriety of this action of the court. According to the view which we have taken, however, we will not enter into the discussion of the court's action in this regard, except to say that it was clearly error to permit the amendment to be filed except upon terms; for if it be conceded that the subject matter of the amendment is germane to that of the original petition, entirely different relief was sought against the defendant. There is no intimation of any personal judgment desired in the original petition, but in the amendment such is the only relief prayed. But, as stated, we will not indulge in a discussion of these matters, but will treat the judgment as properly before us for consideration upon its merits.

Looking now to the $500.00 check, we have seen that it was made payable to bearer. The only evidence concerning it is the testimony of the defendant and the fact that it was found in the bank after defendant's husband ceased to be cashier. Defendant denies emphatically that she ever saw or heard of the check; that she never received one penny of its proceeds, and it is shown by the check itself that her name does not appear upon the back of it as an endorser either written by herself or any other person. It seems to be a well settled rule in the law of banking that a check made payable to one, "or bearer," and not endorsed by the named payee, in the absence of a showing that the payee had been in posses-

sion of the check, is no evidence against such named payee in an action to charge him with the check or its proceeds. Read v. Dickerson's Ex'r, 9 Ky. Law Rep. 534; Bank of Ky. v. Wister, 11 Peters (U. S.) 318.

A check made payable to bearer may be presented by and paid to anyone who has possession of it, and it is shown in the evidence in this case that it was the universal custom of the plaintiff bank to cash checks thus made out, on presentation. It would appear, then, that the bank failed to make a *prima facie* case against defendant as to the $500.00 represented by the check.

In regard to the $1,900.00 item, the proof shows, as we have before stated, that this was sent to the defendant by her husband from New Albany, after he quit the service of the bank. She says in her testimony, which was taken by plaintiff and is the only direct testimony upon the point, that this money was contained in a box in the home of herself and her husband, and that he got it out of the box before he left for New Albany. She furthermore says that at least $750.00 of it was the proceeds of the Dechamp lot which she had sold a short while before that, and that there was also included in it some of her husband's salary as cashier and the remainder of it was rent from her property which her husband as her agent had collected.

We do not find from the record that there had been any recent abstractions of money from the bank by the husband, nor is there anything in the record to show that any of the $1,900.00 was money fraudulently taken from the bank, except an inference to be gathered from the fact that the husband was a defaulter and that his defalcations had covered a period of several years. Including the payment of the $1,900.00, and charging defendant with taxes paid on her property, and $360.00 improvements made thereon, the husband would still be indebted to her in the sum of $67.33 rent on his wife's property and collected by him over and above all payments for all purposes. It is true this does not take into account anything paid for insurance, if he paid anything for that purpose, there being nothing in the record to show that any insurance was ever carried on the property. But, however this may be, it is manifest that if such insurance was paid by the husband, the great bulk of it was done before he became indebted to the bank. He had the use of his wife's money throughout the whole

time.  If, when he paid to her the $1,900.00, he overpaid her any sum above the rents which he had collected, it is evident that it was small and insignificant and would have to be arrived at through the aid of surmises and inferences which we do not feel called upon to employ as against the wife, in view of the testimony heard.

There is nothing in the record showing any fraud on the part of the defendant.  Her dealings with her husband throughout the entire transactions, as well as her testimony in the case, are each free, open and frank, and we fail to find wherein she is in possession of any property which the bank is entitled to appropriate, or that she has done anything justifying a personal judgment against her for any sum.

As to the right of the bank to have proceeded at the proper time under the provision of the statute commonly known as the act of 1856, we are not concerned, as such remedy was not resorted to.

It should have been stated earlier in this opinion that after the filing of the suit the Ohio Valley Banking & Trust Company took over and absorbed the Planters' State Bank, and by an amendment it was substituted as plaintiff in the case, hence it appears as appellee here.

It results from what has been stated that the court erred in rendering personal judgment against the defendant for any sum, but was correct in declining to place the property of the defendant in the hands of the commissioner of the court.

Wherefore, the judgment is reversed on the appeal, and affirmed on the cross-appeal, with directions to proceed in accordance with this opinion.